402 F.2d 867
 Stella McSPARRAN, Guardian of the Estate of Richard R. Riegner, a minor, and Martha M. Fritzinger, parent and natural guardian of Richard R. Riegner, a minor, in her own right
v.
Jeffrey R. WEIST, Joseph R. Weist and Russell Millard, Martha M. Fritzinger, parent and natural guardian of Richard R. Riegner, a minor, in her own right, Appellant.
 No. 16793.
 United States Court of Appeals Third Circuit.
 Argued January 9, 1968.
 Reargued April 16, 1968.
 Decided October 2, 1968.
 Rehearing Denied October 24, 1968.
 
 David Kanner, Kanner, Stein, Feinberg & Barol, Philadelphia, Pa. (Jack E. Feinberg, Edward N. Barol, Kanner, Stein, Feinberg & Barol, Philadelphia, Pa., on the brief), for appellant.
 William B. Freilich, LaBrum & Doak, Philadelphia, Pa. (Joseph G. Manta, James M. Marsh, Philadelphia, Pa., on the brief), for appellee, Russell Millard.
 Argued Jan. 9, 1968
 Before McLAUGHLIN, FREEDMAN, and SEITZ, Circuit Judges.
 Reargued April 16, 1968
 Before HASTIE, Chief Judge, McLAUGHLIN, KALODNER, FREEDMAN, SEITZ and VAN DUSEN, Circuit Judges.
 
 OPINION OF THE COURT
 FREEDMAN, Circuit Judge
 
 1
 This appeal was argued before a panel and we ordered it to be reargued before the court en banc with Esposito v. Emery, 3 Cir., 402 F.2d 878 so that we could review the troublesome question of the jurisdiction of a federal court where diversity of citizenship is created or "manufactured" by the appointment of a nonresident guardian of a minor, selected solely for the purpose of creating diversity. Here federal jurisdiction over the parent's consequential claim is asserted as pendent to the "manufactured" diversity claim of the child for damages.
 
 
 2
 Richard R. Riegner, a minor, was injured in an automobile accident on November 27, 1966, in Berks County, Pennsylvania, where he lived with his mother, Martha M. Fritzinger. In January 1967, being then just under twenty years of age, he petitioned the Orphans' Court of Berks County with his mother's consent and joinder for the appointment of a guardian of his estate, setting out that the only funds which might come into the guardian's hands were "monies which may be obtained by suit or settlement in an action which the proposed guardian will institute in the * * * [United States District Court for the Eastern District of Pennsylvania sitting] at Philadelphia to recover for injuries sustained by said minor" as a result of the accident. On February 6, 1967, the Orphans' Court appointed Stella McSparran as "guardian". In view of the prayer of the petition we shall assume that it intended her to act as guardian of Riegner's estate.
 
 
 3
 A few weeks later Stella McSparran, as guardian of Riegner's estate, instituted the present action in which she was joined as plaintiff by Mrs. Fritzinger, who designated herself as "Parent and Natural Guardian of Richard R. Riegner, a Minor, in Her Own Right."[1] Mrs. Fritzinger claimed damages in the amount of $17,500 for loss of the minor's services and earning power until he attained majority and for medical expenses which she had been compelled to expend and would be required to expend until he attained majority.[2]
 
 
 4
 One of the defendants moved to dismiss Mrs. Fritzinger's claim on the ground that she was not of diverse citizenship from the defendants and that her claim could not be sustained on a theory of pendent jurisdiction. The district court granted dismissal, and in doing so expressed the hope that the question, on which the judges of that court had already expressed differing views, would be resolved by an immediate appeal. 270 F.Supp. 421 (E.D.Pa. 1967).[3] The judgment, however, was not a final judgment under 28 U.S.C. § 1291, and we therefore remanded the record to the district court to afford the parties an opportunity to obtain compliance with the requirements of Rule 54(b) of the Federal Rules of Civil Procedure for the entry of a final judgment as to Mrs. Fritzinger's claim in her own right. We directed that if such a final judgment should be entered within thirty days the record should forthwith be returned to us, and thereupon, having meanwhile retained jurisdiction, we would determine the appeal which would be deemed filed nunc pro tunc as of the date of the return of the record to this court, without the necessity of filing any additional briefs or appendices. We also directed that if such a judgment was not entered within the time fixed the appeal would be quashed. The district court entered a final judgment against Mrs. Fritzinger within the prescribed time and the appeal is now properly before us for decision.
 
 
 5
 It is conceded in the record as well as in the briefs and arguments of counsel that the guardian here is a straw party, chosen solely to create diversity jurisdiction. Before we reach the contention that the mother may maintain her pendent claim in her own right, we are therefore required to determine first whether such artificially created diversity is an adequate foundation for federal jurisdiction.
 
 
 6
 As early as 1808 Chief Justice Marshall stopped counsel in the course of an argument on the question of jurisdiction to say: "The present impression of the court is, that the case is clearly within the jurisdiction of the Courts of the United States. The plaintiffs are aliens, and although they sue as trustees, yet they are entitled to sue in the circuit court [on the ground of diversity of citizenship]." Chappedelaine v. Dechenaux, 8 U.S. (4 Cranch) 306, 308, 2 L.Ed. 629 (1808). A series of Supreme Court cases since that time has held that the citizenship of the fiduciary rather than the beneficiary is controlling in the determination of diversity of citizenship. These cases have involved the citizenship of executors and administrators,[4] trustees[5] and general guardians.[6]
 
 
 7
 The adoption of the Federal Rules of Civil Procedure has created some controversy on whether the representative must be the real party in interest under Rule 17(a) or need merely have capacity to sue under Rules 17(b) and (c). Rule 17(a) authorizes a personal representative such as a guardian, executor or administrator, to sue in his own name without joining the beneficiary; Rule 17(b) in effect provides that the capacity to sue or be sued of one acting in a representative capacity shall be determined by the law of the state in which the district court is held; and Rule 17(c) provides that whenever an infant or incompetent person has a representative such as a general guardian, committee or conservator, the representative may sue or defend on behalf of the infant or incompetent, and if the infant or incompetent does not have a duly appointed representative he may sue or be sued by his next friend or by a guardian ad litem. The focus of he rule is on capacity to sue, and it does not purport to establish standards for the determination of diversity of citizenship. Indeed, as Rule 82 expressly states, the rules do not affect the jurisdiction of district courts. Even though Rule 17(c) authorizes an infant or incompetent to sue or be sued by his next friend or by a guardian ad litem, it has been held that the citizenship of one acting in such a limited representative capacity, although clothed with capacity to sue, is not determinative of diversity of citizenship.[7]
 
 
 8
 The substantive status of the various kinds of representatives is not, of course, uniform, and their authority and duties differ widely. In general, executors, although acting by virtue of court appointment, owe their position to their designation by the testator,[8] and administrators to their relationship to the deceased intestate.[9] While an executor or administrator takes title to the property of the decedent,[10] a guardian of the person of a minor or other incompetent has no interest in his ward's property and a guardian of his estate does not take legal title to the property, which remains in the ward, but merely acts as its custodian or manager. A trustee, on the other hand, is of course vested with the legal title to the property of the trust. See Provident Trust Company of Phila. Case, 346 Pa. 37, 39, 29 A.2d 524, 526 (1943), Stern, C. J. While a guardian of the estate of a minor, does not have title to the property of his ward and may in a certain sense not appear to be the real party in interest, nevertheless, he is expressly authorized by Rule 17(c) to sue on behalf of his ward.
 
 
 9
 We are not here concerned, however, with capacity to sue under Rule 17, nor with the question whether the fiduciary is the real party in interest. Our problem is whether for purposes of diversity jurisdiction we should look to the citizenship of the representative, here the guardian of the estate of a minor, or to the person on whose behalf he acts. In Mexican Central Railway Co. v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245 (1903), the Court held that the citizenship of the guardian of the person and estate of a minor governed in the determination of diversity of citizenship, because the guardian "had the right to bring suit in his own name" under the law of the state of his appointment. But in referring to the Eckman case with approval in Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 51, 75 S.Ct. 151, 99 L.Ed. 59 (1954), the Court characterized the guardian as the real party in interest. In Fallat v. Gouran, 220 F.2d 325 (3 Cir. 1955), we followed the Eckman case and held that diversity of citizenship existed on the basis of the citizenship of the guardian of the estate of a mental incompetent and that the citizenship of the incompetent himself was not the test. In that case residents of Pennsylvania were involved in an automobile accident in Pennsylvania and the married daughter of the incompetent, who was a New Jersey citizen, brought suit in her own name as his guardian. We sustained federal jurisdiction because of the diversity of the daughter's citizenship from that of the defendants although no diversity existed between the defendants and the incompetent himself. We declined to follow the decision to the contrary in Martineau v. City of St. Paul, 172 F.2d 777 (8 Cir. 1949).
 
 
 10
 These decisions deal with the party whose citizenship is to be the test in the determination of the existence of diversity. They do not decide the problem now before us — the effect of the artificial creation or "manufacture" of diversity. As recently as 1954 the Orphans' Court of Philadelphia hesitated to appoint a nonresident guardian because its general rule limited appointment to those who were within its jurisdiction and therefore amenable to its process and to its supervisory authority and control. After a factual determination that larger verdicts were generally obtained in the United States District Court for the Eastern District of Pennsylvania than in the Common Plea Courts of the state the Orphans' Court concluded that, since the only asset of the minor's estate was the personal injury claim, it would yield to the request that it appoint an out-of-state guardian because its primary concern was the financial benefit of its ward. The court had some doubt whether diversity jurisdiction would be found to exist by the federal courts but considered this a question for the federal courts themselves. See Kaufmann's Estate, 87 Pa.Dist. & Co. R. 401 (1954).[11] Since the publication of that opinion the rivulet of "manufactured" diversity cases has swollen to a stream of wide dimensions. The American Law Institute's detailed study of a sample of the diversity cases filed in the Eastern District of Pennsylvania during 1958 and 1959 indicated that 20.5 per cent of them were brought by out-of-state personal representatives of Pennsylvania citizens against Pennsylvania defendants.[12] We are advised that one out-of-state citizen is the guardian in sixty-one pending diversity cases in the Eastern District of Pennsylvania.
 
 
 11
 The desire of suitors to seek justice in the federal courts carries, of course, no stigma. Where actual diversity exists among the appropriate parties, the choice to resort to the federal courts rather than the state courts cannot be denied them. Nor does a barrier grow simply because an increasing number of litigants prefer the federal to the state jurisdiction. But cases in which a straw or nominal fiduciary is appointed to create diversity stand on totally different ground than those in which the courts are simply concerned with the general question whether the citizenship of the personal representative or his ward or beneficiary should be the test of diversity jurisdiction. In cases of "manufactured" diversity jurisdiction there is brought into play the question of the applicability of 28 U.S.C. § 1359 which provides: "A district court shall not have jurisdiction of a civil action in which a party, by assignment, or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."
 
 
 12
 "Manufactured" diversity jurisdiction is not a new phenomenon in this Circuit. In Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010 (3 Cir. 1950), our first case on the subject, we sustained a diversity action under the wrongful death and survival statutes of Pennsylvania although the New Jersey plaintiff who was appointed as administratrix ad prosequendum was a stenographer employed in the office of the widow's attorney. We held that the administratrix ad prosequendum was the real party in interest and that her selection did not amount to collusion under what is now 28 U.S.C. § 1359, although the lawsuit apparently was the only asset under her nominal management. We placed heavy reliance on Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), where Mr. Justice Roberts said: "To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it."
 
 
 13
 In Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3 Cir. 1959), the mother of a deceased minor resigned as administratrix of his estate to permit the appointment of a non-resident so that suit could be brought in the federal court. In a unanimous decision by the court en banc we held in an opinion by Chief Judge Biggs that the nonresident administrator d.b.n. had capacity to sue and that his citizenship rather than that of the beneficiaries of the decedent's estate was determinative of diversity jurisdiction. We also held that § 1359 did not bar the action, because there was involved no collusion between plaintiff and defendant in fraud of the court, and the action was not "improperly" brought since there was no impropriety or irregularity involved in the perfectly valid proceeding in the state court for the appointment of the out-of-state fiduciary. 264 F.2d at 786. Corabi has become a leading case and is the authoritative foundation for the maintenance of "manufactured" diversity jurisdiction.[13]
 
 
 14
 While we have not had occasion to deal expressly with "manufactured" diversity jurisdiction in the case of the guardian of the estate of a minor, other courts have applied Corabi in such cases.[14] Whatever refinement might justify a distinction between the case of a guardian of the estate of a minor and cases such as an administratrix ad prosequendum or an administrator d.b.n., we prefer to deal with the problem in its broader dimensions and determine the effect of "manufactured" diversity jurisdiction in the light of § 1359.
 
 
 15
 Section 1359 is a combination in simplified form of the old anti-assignment statute (28 U.S.C. § 41(1) (1940 ed.)) derived from § 11 of the Judiciary Act of 1789,[15] with the separate provision originating in the Act of March 3, 1875[16] and later incorporated as § 37 of the Judicial Code of 1911. (28 U.S.C. § 80 (1940 ed.)) In combining these two provisions the reviser intended no alteration in the meaning of § 37 which empowered the district court to dismiss a suit "at any time * * * [when] such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court, or the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable * * *." The reviser's note to § 1359 states "Provisions * * * for dismissal of an action not really and substantially involving a dispute or controversy within the jurisdiction of a district court were omitted as unnecessary [because] * * * any court will dismiss a case not within its jurisdiction when its attention is drawn to the fact, or even on its own motion."
 
 
 16
 While the preliminary words of § 37 no longer appear in § 1359, we believe they give content to its otherwise indefinite and ambiguous words "improperly" or "collusively". They say in effect that a nominal party designated simply for the purpose of creating diversity of citizenship, who has no real or substantial interest in the dispute or controversy, is improperly or collusively named.
 
 
 17
 The impropriety or collusion is not any conduct between the plaintiff and the defendant, for as Chief Judge Biggs pointed out in Corabi, the defendant may even oppose the guardian's prosecution of the action. The collusion exists betwen the nonresident guardian and the applicant for his appointment in the state proceeding as a result of which one who would not otherwise have been named as guardian has achieved the status from which he claims the right to sue because of his artificial selection solely for the purpose of creating jurisdiction. He is not chosen because of his capacity to manage the property of his ward, and indeed need have no experience in the management of property. He is outside the jurisdiction of the court which is to supervise his nominal activity. In truth none of the considerations which normally lead to the selection of a guardian affects the local appointing court's determination because it knows that in the "manufactured" diversity case the guardian is not expected to manage any property for his supposed ward and usually will not continue in office or exercise any real function after any funds are recovered in the litigation. He is no more than a representative of the minor's counsel whom counsel provides in order to establish a diversity of citizenship which will permit him to bring the action in the federal court. As a straw party he does not stand in the position of a true fiduciary whose involvement in litigation is incidental to his general duty to protect the interests of those for whom he is responsible.
 
 
 18
 The multiplication of "manufactured" diversity cases is a reflection on the federal judicial system and brings it into disrepute. Efforts therefore have been made to remedy the evil by legislation recommended by the Judicial Conference of the United States,[17] and the American Law Institute in its recent study of the division of jurisdiction between the state and federal courts has recommended a statute which would test diversity in all cases by the citizenship of the beneficiary or the decedent rather than the personal representative.[18] There would be no need for such legislation in "manufactured" diversity cases but for the interpretation of § 1359 in our leading case of Corabi, and similar decisions.
 
 
 19
 We believe on reconsideration that § 1359 is not so limited in scope as was held in Corabi,[19] especially when read in the full background of the language of its predecessor provision originating in the Act of 1875. Further light is supplied by the construction long given to the anti-assignment provision which is now also incorporated in § 1359. It is well settled that the anti-assignment provision of § 1359 bars the creation of diversity jurisdiction by the transfer of a right of action to a collection agent whose only interest in prosecuting the suit is the recovery of his fee, even though he is vested with a portion of the legal title and has been expressly authorized to sue on behalf of the beneficiaries.[20] The appointment of a fictitious guardian or representative selected by counsel for no other purpose than to create diversity jurisdiction in the action which will constitute the only asset in the estate is not substantially different from an assignment to an agent for the purpose of instituting litigation.
 
 
 20
 There are two obvious differences between the position of an assignee for the purpose of litigation and a straw fiduciary. In the former case there is an assignor in existence who might have sued in the state court in his own name, whereas in the case of an estate or a ward there is no one competent to sue prior to the appointment of a fiduciary. But since the appointee is in effect a straw party there is no reason why he should not be construed to come within the prohibition in § 1359 against invoking the diversity jurisdiction of a federal court by having one made a party improperly or collusively whether by assignment or otherwise. The second distinction in the case of a fiduciary is that he owes his position to a decree of a state court. We do not impugn this decree collaterally by refusing to recognize the citizenship of a straw guardian. Guardian he remains, but since he is acting in the capacity of a straw party we refuse to recognize his citizenship for purposes of determining diversity jurisdiction. His appointment may have authorized him to bring suit but his nominal status does not make his citizenship determinative for purposes of diversity. He occupies in effect the role of a guardian ad litem or a next friend or prochein ami whose function merely is to supply a party on the record responsible for costs. (Bertinelli v. Galoni, 331 Pa. 73, 75, 200 A. 58, 59, 118 A.L.R. 398 (1938)), and whose citizenship would not be determinative of diversity jurisdiction.[21]
 
 
 21
 It has often been said that in judging whether diversity of citizenship exists the courts will not inquire into the motive which led to the appointment of the personal representative.[22] While, of course, the desire to obtain diversity jurisdiction is not in itself improper, nevertheless it is not irrelevant in the determination of the question whether the fiduciary is in fact a straw fiduciary whose citizenship is to be disregarded.[23] Moreover, it is difficult to see how motive can be entirely ignored in ascertaining the purpose for which the representative is selected in view of the language of § 1359. The statute outlaws the creation of jurisdiction where a party has been improperly or collusively made or joined to invoke the jurisdiction of the court. While the statute does not ban the appointment of nonresident fiduciaries, the artificial selection of a straw representative who has no duty or function except to offer the use of his citizenship to create diversity in contemplated litigation is a violation of its provisions. This is made clear by the knowledge that the appointing court normally would not have designated him because of his absence from the jurisdiction and the consequent limitation of its control over him, all of which can be put aside because there is at the time of appointment nothing for him to administer and he is not expected to exercise any real function.
 
 
 22
 In Jaffe v. Philadelphia and Western R. Co., 180 F.2d 1010, 1013 (3 Cir. 1950), we relied heavily on Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), for our holding that motive is irrelevant in the artificial creation of diversity jurisdiction. Mecom is immediately distinguishable from the present case because it involved an administrator, whereas here we deal with a guardian, who does not have title to the ward's right of action. But we believe § 1359 reaches executors and administrators as well as guardians and therefore put this difference aside. The fundamental distinction between Mecom and the present case is that there the collusion statute was not involved because the resignation of the administratrix and the appointment of her successor were acts done not to create federal jurisdiction but to prevent it from attaching. Section 1359, as its language clearly shows, expresses a policy against the creation of federal jurisdiction and not against its avoidance.[24] It proscribes improper or collusive conduct "to invoke" diversity jurisdiction and hence was inapplicable in the Mecom case.
 
 
 23
 In Corabi we placed great weight on Black & White Taxicab v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928) for the irrelevance of motive. But the operative facts in Black & White Taxicab distinguish it from the present case. There a new corporation created to make diversity jurisdiction possible was not a mere straw. It became the sole party in interest after the old corporation was dissolved and all corporate assets were transferred to the successor. While the Court held that jurisdiction existed regardless of the motives of the management and shareholders of the corporation, it did so in the context of a real transaction which had significance beyond establishment of diversity jurisdiction. The Court in Black & White Taxicab therefore distinguished Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895) and Miller & Lux v. East Side Canal & Irrigation Co., 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908), which we recognized in Corabi might have been controlling but for the construction put upon § 37 by the Black & White Taxicab case. In those two earlier cases, however, the manufacture of diversity jurisdiction by the creation of new corporations and the transfer of assets to them in order to make it possible for them to bring diversity suits in the federal courts was stricken down as collusive, under the then Act of 1875. The collusion, of course, was not with the defendant but among those having charge of the plaintiff's assets and the cause of action. Those cases were not overruled by Black & White Taxicab.
 
 
 24
 Since plaintiff invoked diversity jurisdiction the burden was upon her to prove all the facts by which it could be sustained.[25] Here plaintiff has added nothing to a record which shows on its face a naked arrangement for the selection of an out-of-state guardian in order to prosecute a diversity suit. It was early said in Lehigh Mining & Mfg. Co.,[26] quoted in Miller & Lux:[27] "But when the inquiry involves the jurisdiction of a federal court — the presumption in every stage of a cause [is] * * * that it is without the jurisdiction of a court of the United States, unless the contrary appears from the record." This is particularly true in diversity jurisdiction which trenches upon the jurisdiction of the state courts. As Mr. Justice Frankfurter said in City of Indianapolis v. Chase National Bank, 314 U.S. 63, 76-77, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941): "The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of `business that intrinsically belongs to the state courts,' in order to keep them free for their distinctive federal business. [citations omitted] `The policy of the statute [conferring diversity jurisdiction upon the district courts] calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. * * * Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'"
 
 
 25
 In the present case not only was the straw guardian appointed solely to create diversity jurisdiction, but the controversy itself is essentially local, and one of the reasons underlying diversity jurisdiction, the prevention of discrimination against out-of-state litigants,[28] is completely absent. The accident occurred in Pennsylvania, where the injured minor and all the defendants reside and have their citizenship.
 
 
 26
 We hold therefore that the attempt to confer diversity jurisdiction in the present case offends against § 1359. Jaffe and Corabi are hereby overruled, and Fallat v. Gouran is disapproved to the extent that it indicates approval of "manufactured" diversity. Whether in an individual case diversity jurisdiction is "manufactured" is, of course, a question of fact. Here "manufactured" diversity is conceded, but in other cases where it is not conceded it will be for the district court to make the factual determination.
 
 
 27
 In the present case the accident giving rise to the cause of action occurred on November 27, 1966 and under the governing Pennsylvania law the statute of limitations will not expire until two years from that date.[29] Since an action may still be instituted in the state court within the period of the statute of limitations, there is no reason to withhold application in the present case of the rule here announced. The pendent claim has no independent basis for jurisdiction and cannot attach to the main action which falls because the diversity of citizenship was artificially created.
 
 
 28
 It follows, therefore, that the judgment from which Mrs. Fritzinger has appealed must be affirmed.
 
 
 29
 We recognize that many actions are now pending in the courts of this circuit in reliance on our earlier decisions. In many of these actions the statute of limitations may already bar the institution of new suits in the state courts, although in some of them protective state court actions may have been filed. To apply the rule we have here announced to all pending and future actions indiscriminately would work great hardship on those who have relied on our prior recognition of artificial diversity jurisdiction. It is therefore appropriate to declare the new rule to be prospective.
 
 
 30
 It is true that we deal here with a jurisdictional question. But the notion that "jurisdiction" is a subject of some magical quality so that a decision against jurisdiction prevents according recognition to other relevant considerations must yield to the knowledge that it is our construction of the statute which determines in the present case whether jurisdiction exists or is absent. The Supreme Court relatively early recognized prospective overruling as a judicial technique of general application (Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1936)), and recently has restricted to prospective application some of its decisions on questions of constitutional law, an area long considered as much immune from prospective overruling as the area of federal jurisdiction. As we had occasion to say in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 377 F.2d 776, 789 (3 Cir. 1967), reversed on other grounds, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968): "Recent decisions of the Supreme Court in criminal cases have made it clear that the unrealistic theory that the law has always been what the latest case for the first time declares it to be, the so-called Blackstonian view, must yield to the practical realization that conduct had occurred in reliance on the earlier rules of law to the contrary."[30]
 
 
 31
 We hold, therefore, that the overruling of the doctrine of Corabi shall take effect as follows: It shall apply to all causes of action which arise after the date of the filing of this opinion. In cases involving causes of action which arose prior to such date, including cases now pending, a district court shall apply the new rule against artificially created diversity, either on motion of a party or sua sponte, if it is conceded by the parties or the court finds as a fact that diversity was artificially created, but only where the court finds that in the circumstances of the particular case there is ample time and opportunity for the plaintiff to institute a new action in the state court and that no unreasonable burden will be imposed on the plaintiff by the dismissal of the federal action.
 
 
 32
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The complaint gives no explanation for the absence of the minor's father as a party
 
 
 [2]
 The district court's opinion states that Mrs. Fritzinger's claim sought "out-of-pocket medical expenses" but it is clear from her allegations that the claim was for more than this. In the absence of any indication by the district court that the claim that she was damaged to the extent of $17,500 lacked bona fides, we shall assume that the claim met the required jurisdictional amount. See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Jaconski v. Avisum Corp., 359 F.2d 931, 934-935 (3 Cir. 1966); Brough v. Strathmann Supply Co., 358 F.2d 374, 377-378 (3 Cir. 1966); Wade v. Rogala, 270 F.2d 280, 284-285 (3 Cir. 1959)
 
 
 [3]
 See Berman v. Herrick, 30 F.R.D. 9 (E. D.Pa.1962), permitting intervention in a diversity case under Rule 24(b) of the Federal Rules of Civil Procedure, although the intervenors were not of diverse citizenship from the opposing party and did not meet the jurisdictional amount; Newman v. Freeman, 262 F. Supp. 106 (E.D.Pa.1966), holding that a nondiverse parent's claim could be maintained as pendent to that of a minor
 The court below expressly declined to follow the Newman case. After this appeal was taken, three judges sitting together in the district court also declined to follow Newman and held that there was no jurisdiction over the claim of nondiverse parents who attempted to join their claim with that of their child suing by a foreign guardian, and that even if the court had jurisdiction over the parents' claim, it would exercise its discretion to decline to hear it. Olivieri v. Adams, 280 F.Supp. 428 (E.D.Pa.1968).
 The Newman case is discussed in Note, UMW v. Gibbs and Pendent Jurisdiction, 81 Harv.L.Rev. 657, 662-63 (1968).
 
 
 [4]
 See Childress v. Emory, 21 U.S. (8 Wheat.) 642, 668-669, 5 L.Ed. 705 (1823); Rice v. Houston, 80 U.S. (13 Wall.) 66, 21 L.Ed. 484 (1871)
 
 
 [5]
 See Coal Company v. Blatchford, 78 U.S. (11 Wall.) 172, 20 L.Ed. 179 (1870); Dodge v. Tulleys, 144 U.S. 451, 12 S.Ct. 728, 36 L.Ed. 501 (1892)
 
 
 [6]
 See Mexican Central Railway v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 47 L. Ed. 245 (1903)
 
 
 [7]
 See Appelt v. Whitty, 286 F.2d 135 (7 Cir. 1961); Berkowitz v. Philadelphia Chewing Gum Corp., 303 F.2d 585 (3 Cir. 1962), where it was unnecessary to decide the question. See also Blumenthal v. Craig, 81 F. 320 (3 Cir. 1897) and Voss v. Neineber, 68 F. 947 (W.D. Ohio 1885), decided before the adoption of the Federal Rules of Civil Procedure
 
 
 [8]
 See, e.g., Pennsylvania Fiduciaries Act of 1949, § 305(a), 20 Purdon's Pa.Stat. Annot. § 320.305(a)
 
 
 [9]
 See, e.g., Pennsylvania Fiduciaries Act of 1949, § 305(b), 20 Purdon's Pa.Stat. Annot. § 320.305(b)
 
 
 [10]
 See, e.g., Pennsylvania Fiduciaries Act of 1949, §§ 103, 104, 20 Purdon's Pa.Stat. Annot. §§ 320.103, 320.104
 
 
 [11]
 A year earlier in Johnson, Minor, 3 Pa.Co. Fiduciary Rep. 337 (Orphans' Court, Delaware County 1953), a local court refused to remove a guardian who had been appointed to create diversity
 
 
 [12]
 American Law Institute, Study of the Division of Jurisdiction Between the State and Federal Courts (Part I), pp. 170-77 (Official Draft, 1965)
 
 
 [13]
 See Lang v. Elm City Construction Co., 324 F.2d 235 (2 Cir. 1963), aff'g per curiam 217 F.Supp. 873 (D.Conn.1963); Stephan v. Marlin Firearms Co., 325 F. 2d 238 (2 Cir. 1963), aff'g on opinion below 217 F.Supp. 880 (D.Conn.1963); Janzen v. Goos, 302 F.2d 421 (8 Cir. 1962); County of Todd v. Loegering, 297 F.2d 470 (8 Cir. 1961). Cf. Curnow v. West View Park Co., 337 F.2d 241 (3 Cir. 1964); Borror v. Sharon Steel Co., 327 F.2d 165 (3 Cir. 1964). For a general discussion of the problem see Cohan & Tate Manufacturing Diversity Jurisdiction by the Appointment of Representatives, 1 Villanova L.Rev. 201 (1956)
 
 
 [14]
 Stephan v. Marlin Firearms Co., supra note 13, appliedCorabi to a guardian case without discussion. Contra: Martineau v. City of St. Paul, 172 F.2d 777 (8 Cir. 1949).
 The district courts in this Circuit have uniformly held Corabi applicable to guardianship cases. DiStefano v. Lehigh Valley Railroad Co., 258 F.Supp. 721 (E. D.Pa.1966); see Johnstone v. O'Connor & Co., 164 F.Supp. 66 (E.D.Pa.1958); Morris v. Bradley, 139 F.Supp. 519 (E. D.Pa.1956). See also Fallat v. Gouran, 220 F.2d 325, 327 n. 2 (3 Cir. 1955). See Berkowitz v. Philadelphia Chewing Gum Corp., 317 F.2d 192, aff'g per curiam 217 F.Supp. 80 (E.D.Pa.1962), and compare with the earlier phase of the same case in 303 F.2d 585 (3 Cir. 1962).
 
 
 [15]
 Act of September 24, 1789, ch. 20, § 11, 1 Stat. 73
 
 
 [16]
 Ch. 137, § 5, 18 Stat. 470
 
 
 [17]
 See 1959 Report of Judicial Conference of United States, p. 8. A bill carrying out this recommendation was introduced by the Chairman of the House Committee on the Judiciary in 1963, but was not acted upon. See H.R. 2832, 88th Cong., 1st Sess
 
 
 [18]
 American Law Institute, Study of the Division of Jurisdiction Between the State and Federal Courts, Part I, Proposed § 1301(b) (4) (Official Draft 1965)
 
 
 [19]
 In Caribbean Mills, Inc. v. Kramer, 392 F.2d 387, 393 (5 Cir. 1968), Judge Thornberry reviewingCorabi's analysis of § 1359 concluded that: "by focusing on the literal meanings of the two words [`improperly or collusively'] the court virtually emasculated the statute."
 
 
 [20]
 See Southern Realty Investment Co. v. Walker, 211 U.S. 603, 29 S.Ct. 211, 53 L.Ed. 346 (1909); Williams v. Nottawa, 104 U.S. 209, 26 L.Ed. 719 (1881); Caribbean Mills, Inc. v. Kramer, 392 F.2d 387 (5 Cir. 1968), following both earlier cases. See also Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000 (D. Vt. 1967), aff'd on opinion below, 393 F. 2d 934 (2 Cir. 1968)
 
 
 [21]
 See Wright, Federal Courts § 29, p. 82 (1963); see also cases cited supra, note 7. The distinction between a next friend or prochein ami or a guardian ad litem and the guardian of the person or estate of a minor is an ancient one. See 1 Blackstone, Commentaries on the Laws of England, pp. *460-64 (1765)
 
 
 [22]
 See, e.g., Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 524, 48 S. Ct. 404, 72 L.Ed. 681 (1928); Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931)
 
 
 [23]
 See the careful analysis of Supreme Court authority in Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000, 1011-1012 (D.Vt. 1967), aff'd on opinion below, 393 F.2d 934 (2 Cir. 1968)
 
 
 [24]
 3 Moore, Federal Practice, p. 1320 (2d ed.1948), quoted inJaffe, 180 F.2d at 1013. See also 3A Moore, Federal Practice, § 17.05[3-3] (2d ed. 1968).
 
 
 [25]
 See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)
 
 
 [26]
 160 U.S. at 336-337, 16 S.Ct. at 311
 
 
 [27]
 211 U.S. at 302, 29 S.Ct. 111
 
 
 [28]
 See Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 54, 75 S.Ct. 151, 99 L.Ed. 59 (1954), Frankfurter, J., concurring
 
 
 [29]
 Act of June 24, 1895, P.L. 236, § 2, 12 Purdon's Pa.Stat.Annot. § 34
 
 
 [30]
 The footnote to this statement in Hanover reads as follows: "Thus, e. g., retroactivity was refused to be accorded in Linkletter v. Walker, 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601] (1965), to Mapp v. Ohio, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961), dealing with illegally seized evidence; in Tehan v. United States ex rel. Shott, 382 U.S. 406 [86 S.Ct. 459, 15 L.Ed.2d 453] (1966), to Griffin v. State of California, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] (1965), dealing with comment on the failure of a defendant in a state criminal trial to take the stand; in Johnson v. State of New Jersey, 384 U.S. 719 [86 S.Ct. 1772, 16 L.Ed.2d 882] (1966), to Escobedo v. [State of] Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] (1964) and Miranda v. State of Ariz., 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), dealing with custodial police questioning of criminal suspects. See also Butcher v. City of Philadelphia, 380 Pa. 290, 110 A.2d 349 (1955)." Ibid. at 789
 Since Hanover the Supreme Court has reiterated this view. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967); DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968).
 
 
 
 33
 McLAUGHLIN, Circuit Judge (dissenting).
 
 
 34
 The District Court here properly confined our applicable out of state administrator rule to the administrator's action and barred the joining with it of a non-diversity suit as a matter of right under the cover of the administrator claim. That was the only question before us from the District Court on this appeal. I would affirm the judgment of the District Court solely on that point and as decided by the District Court. I dissent from the views expressed by the majority opinion.
 
 
 35
 KALODNER, Circuit Judge (dissenting).
 
 
 36
 In the instant case one Stella McSparran, a resident of New Jersey, was appointed guardian by a Pennsylvania court, to prosecute a personal injury claim for Richard R. Riegner, a minor, against the defendants Weist and Millard. The minor and the defendants are Pennsylvania citizens and the guardianship was designed to create diversity of citizenship jurisdiction. The guardian filed this action in the Eastern District of Pennsylvania for damages accruing to the minor, and the latter's mother, Martha M. Fritzinger, a Pennsylvania citizen, joined in the action in her own right seeking out-of-pocket medical expenses.
 
 
 37
 The sole issue presented in the District Court was whether a parent who lacks diversity may join, as a matter of right, in the created diversity suit of a minor child. The District Court held that the doctrine of pendent jurisdiction did not grant a "right" to the mother to prosecute her independent claim in the prevailing circumstances, viz., the "artificial" diversity jurisdiction, and dismissed her claim for "lack of diversity."
 
 
 38
 The only issue presented by the parties on this appeal was whether the District Court erred in dismissing the mother's independent claim for damages for the reason it assigned.
 
 
 39
 The majority has seen fit to side-step the issue presented and to affirm the District Court's disposition solely on the threshold ground that the "manufactured" diversity jurisdiction of the guardian's action in behalf of the minor "offends against § 1359", 28 U.S.C.A., overruling our prior decisions to the contrary.
 
 
 40
 I dissent from the majority's holding that § 1359 forbids "manufactured" diversity jurisdiction, for the reasons stated in Judge Biggs' dissent in Esposito v. Emery, 3 Cir., 402 F.2d 878, today decided.
 
 
 41
 I am further of the opinion that the District Court had pendent jurisdiction with respect to the mother's independent claim and would reverse the District Court's ruling to the contrary. Borror v. Sharon Steel Co., 327 F.2d 165 (3 Cir. 1964); Newman v. Freeman, 262 F.Supp. 106 (E.D.Pa.1966). See too Wilson v. American Chain & Cable Company, Inc., 364 F.2d 558 (3 Cir. 1966).
 
 
 42
 For the reasons stated I would reverse the Order of the District Court dismissing the action of Martha M. Fritzinger, in her own right, for lack of diversity jurisdiction.