**Ellon BUTLER, guardian of the Estate of Michael J. Ware, a minor, and James Ware and Gloria Goddard**

**v.**

**Katherine P. COLFELT.**

**Civ. A. No. 42838.**

United States District Court, E. D. Pennsylvania.

May 13, 1970.

Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for plaintiff.

White & Williams, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

TROUTMAN, District Judge.

This action arose from an accident involving Pennsylvania residents which occurred in Pennsylvania on December 2, 1966, when a vehicle operated by the defendant struck a bicycle being operated by the minor plaintiff, Michael J. Ware. Appearing as parties-plaintiff are James Ware and Gloria Goddard, the natural parents of the minor plaintiff and Ellon Butler, guardian of the estate of the minor plaintiff. At the time of the accident the parents, their minor son and the defendant were all Pennsylvania residents. Ellon Butler, duly appointed guardian of the minor plaintiff, was, at the time of the accident, at the time of her appointment as guardian, and at the time of filing suit, a resident of the State of New Jersey. Therefore, jurisdiction is based upon diversity of citizenship.

Relying, *inter alia*, upon McSparran v. Weist, 402 F.2d 867 (3rd Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969), the defendant has filed a motion to dismiss for lack of jurisdiction alleging "manufactured" diversity. A saving action has been instituted and is pending in the Court of Common Pleas in Chester County, Pennsylvania. The question presented by defendant's motion is whether the plaintiff has made a sufficient showing of facts to sustain federal jurisdiction.

In McSparran v. Weist, *supra*, the Third Circuit Court of Appeals clearly and unequivocally held that the appointment of an out-of-state guardian solely to create diversity jurisdiction violates 28 U.S.C. § 1359[1] which denies federal diversity jurisdiction where a party has been improperly or collusively made or joined to invoke jurisdiction. The manufactured character of the asserted diversity was conceded in *McSparran*. However, the Court wisely observed that cases would follow in which there would be no such concession. In such circumstances, it is the duty of the District Court to make the factual determination on the record. Groh v. Brooks, 421 F.2d 589, at 594, 595 (3rd Cir. 1970).

Since the plaintiff has invoked the jurisdiction of the Court the burden rests upon her to prove all the facts to sustain it. McSparran v. Weist, *supra*, 402 F.2d at 875; Richards v. Dervarics, 302 F.Supp. 709 (M.D.Pa.1969). When an inquiry involves the jurisdiction of a Federal Court, the *McSparran* Court noted that it is presumed that the Court is without jurisdiction "unless the contrary appears from the record". This is particularly true "in diversity jurisdiction which trenches upon the jurisdiction of the state courts." McSparran, *supra*, 402 F.2d at 876. Noting these considerations, the Third Circuit recently, in Groh v. Brooks, *supra*, suggested several factors to be used as guidelines in making determinations concerning artificially created diversity jurisdiction.

"In determining whether or not diversity has been artifically created, the district court may consider, inter alia, such factors as the *identity* of the representative and his *relationship* to the party represented; the *scope* of the representative's powers and duties; *any special capacity* or *experience* which the representative may possess with respect to the purpose of his appointment; whether there exists a *non-diverse* party, such as a parent in a suit for injuries to a child, who might more normally be expected to represent the interests involved; whether those seeking the appointment of the representative *express any particular reasons* for selecting an out-of-state person; and whether, apart from the appointment of an out-of-state representative, the *suit is one*

---

1. 28 U.S.C. § 1359 provides:
   "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court".

*wholly local* in nature." (Emphasis added.)

The plaintiff has had a full opportunity to present the facts by way of depositions, briefs or memoranda and oral argument. Accordingly, we shall proceed to a consideration of the record in the light of the "presumption against federal jurisdiction" to determine whether plaintiff has met the "burden" resting upon her and whether there is a "clear showing * * * that jurisdiction exists" based upon the considerations and tests suggested recently by the Third Circuit.

In applying to the Orphans Court of Chester County for the appointment of a guardian for the minor plaintiff, the parents, also plaintiffs herein, alleged, *inter alia*, that:

"The minor is entitled to no fund except as a result of litigation connected with this accident, *for which purpose*, it is requested that a guardian be appointed." (Emphasis added) [2]

No other "purpose" was suggested in the petition itself. Thus, it is evident that "litigation" was the primary if not the sole purpose of this appointment. In further suggesting the appointment of Ellon Butler it was alleged that:

(a) She was a resident of the State of New Jersey;

(b) She was 28 years of age;

(c) She was the minor's aunt;

(d) She did not reside with the minor; and

(e) She had no interest in the proceedings.[3]

It was further alleged that the parents were divorced and that the minor lived with his mother, Gloria Goddard, at 916 Gulf Road, Wayne, Pennsylvania [4]. In the "consent" attached to the petition and signed by Ellon Butler she stated, as alleged in the petition, that she resided in Somerset, New Jersey, and that she was a "housewife".[5]

The petition was filed with the Chester County Court in April or May 1967, and prior to the *McSparran* case.[6] On November 7, 1969, and after the *McSparran* case, depositions were taken from which further facts were developed concerning the appointment of Ellon Butler, as guardian.

Gloria Goddard, the mother of the minor plaintiff, testified that she has twice been married and twice divorced (Dep. p. 2). Michael Ware, the natural father of the minor plaintiff, from whom she was divorced in 1963 (Dep. p. 6), resided in Philadelphia, Pennsylvania, at the time this cause of action arose and at the time of the accident, Mrs. Goddard, together with the minor plaintiff and her second husband, resided in Wayne, Pennsylvania. The minor plaintiff's mother is thirty-two years of age and she does not live and has never lived with her sister, Ellon Butler, the guardian here involved. From Mrs. Goddard's deposition, it appears that during all the time that the minor plaintiff has been in her care, he has received every attention that good care requires.

Mrs. Butler, guardian, does not and has not generally cared for the minor plaintiff. She presently lives in Buffalo, New York, and not in New Jersey.[7]

At most, Mrs. Butler has kept the minor plaintiff for a few weeks during the summer.[8]

---

2. See paragraph 3 of petition filed with the Orphans Court of Chester County.

3. See paragraph 5 of petition filed with the Orphans Court of Chester County.

4. See paragraph 2 of petition filed with the Orphans Court of Chester County.

5. See "Consent" attached to said petition.

6. The *McSparran* opinion was decided on October 12, 1968, and a rehearing denied on October 24, 1968.

7. "Q. What, if anything, does Mrs. Butler have to do with taking care of Michael?

   A. Mrs. Butler doesn't care for Michael physically at all. Mrs. Butler resides in Buffalo, New York." (Dep. p. 19)

8. "Q. And has Mrs. Butler ever had anything to do with taking care of Michael?

Mrs. Butler does not oversee the minor's personal affairs. The record indicates that a "personal relationship" exists between Mrs. Goddard and her sister so that Mrs. Butler sometimes sends her sister money when she is "short". (Dep. p. 20) No times, occasions or amounts are specified. Aside from that Mrs. Goddard describes the relationship as follows:

> "A. It's a family relationship, the things a family do, send gifts, presents, things like this, the usual family things." (Dep. p. 20)

Regarding the circumstances and reasons for appointing Mrs. Butler as guardian Mrs. Goddard stated that "[w]hen it became apparent to us [the parents] in order to have a suit, one or the other would have to be named guardian, we were in a quandry about this because my marital condition wasn't too good and he [Mr. Ware] was ill." It was further stated that neither parent had confidence in the other to act as guardian. However, they did have confidence in Mrs. Goddard's sister because she had a "stable marriage and a husband of good repute" (Dep. p. 36). However, the deposition further brought out that Mrs. Goddard was not certain of the duties and responsibilities of a guardian.[9] Mrs. Butler, the appointed guardian, likewise doesn't know the duties of a guardian, has never performed such duties and has expressed no particular interest prior to the accident in the minor plaintiff any different from her general interest in other nephews and nieces.[10] She has felt "concerned"

A. She has kept him for a couple weeks in the summer. Mrs. Butler is Michael's aunt.
Q. What summer did she keep him a couple weeks?
A. The summer of, that summer before you went to Buffalo and the summer before that." (Dep. pp. 19 and 20)

9. "Q. Prior to your making the decision to name your sister as guardian for the purposes of bringing this suit, was any explanation given to you as to what the duties of a guardian would be under those circumstances?
A. An explanation was probably given to me. I would not like to state it. I am not quite sure I would remember exactly what was said to me.
Q. Well, do you remember what was said to you at all?
A. I knew that it was necessary.
Q. That is all you can recall now?
A. Yes, sir." (Dep. p. 39)

10. "Q. And were you ever told what the duties of being a guardian of Michael would be?
A. *Not the actual duties, no, I don't remember.*
Q. Have you ever assumed any responsibility other than being named in this law suit for Michael's estate?

A. Well, it wasn't necessary before this. I always took an interest in his welfare prior to this.
Q. In any way other than you do for your other nephews and nieces?
A. *No more than any other.*
\* \* \* \* \*
Q. Have you been in any way instrumental in his care since the accident?
A. As far as caring for him physically?
Q. Yes.
A. No.
Q. In any other way?
A. I have been concerned about he received the right doctors and moral support for my sister, financial aid.
Q. Well, you have helped your sister generally, is that correct?
A. Yes, and a lot of it is a result of Michael's illness.
Q. Do you want to tell us specifically?
A. The financial aid has been as a result of her needing money because he had been sick. If he hadn't been sick, she wouldn't have needed the money.
Q. How do you know that?
A. Well, because she's had to use money that she would have used otherwise for other things, since he was ill, had to use that money for his illness.
A. Has she told you this?
A. Yes.
Q. Specifically what the money was necessary for?

about the law suit, has had her lawyer in New York "check on the Pennsylvania lawyers" and feels she can do a "better job" because she is "neutral" as between the minor's natural parents. (Dep. p. 43) She is apparently about two years younger than Mrs. Goddard, the minor plaintiff's mother.[11]

Analyzing the factors suggested by the *Groh* decision, it seems apparent to this Court that diversity jurisdiction was artificially manufactured and that the action should be dismissed. The representative, Ellon Butler, in this case is an aunt of the minor plaintiff. Mere relationship cannot be determinative of jurisdiction. Groh v. Brooks, *supra*. However, we do not find this to be the controlling factor herein. From the record it is thus apparent that Mrs. Butler is a younger sister of Mrs. Goddard, appointed as guardian "for the purpose" of litigation and that she then lived in New Jersey and now lives in Buffalo, New York. The record clearly demonstrates that she has never taken care of the minor plaintiff except for brief summer visits on two occasions and that her interest in the minor plaintiff is little different than her interest in other nephews and nieces. Since the accident Mrs. Butler has given her sister some financial help as to which she is vague and non-specific. The primary reason suggested in support of the appointment was that because of marital difficulties between the parents they lacked "confidence" in each other and they had "confidence" in Mrs. Butler who had a "stable marriage" and a husband of "good repute". However, the record indicates that the minor has received more than adequate care in the custody of his natural parent, Mrs. Goddard. There is no indication that it would be otherwise except for the parents' statement

of mistrust for each other. Furthermore, Mrs. Goddard knew little or nothing of the duties of a guardian when she suggested the appointment of Mrs. Butler. Mrs. Butler herself then and now knows little more of such duties and has never acted in that capacity. Moreover, she has no apparent expertise whatever in the field of investments and finance. She has never been exceptionally "close" to the minor plaintiff, although a good and satisfactory family relationship exists between her and Mrs. Goddard. Except for alleged limited contributions to her sister, she has never taken any special interest in the minor plaintiff. She has geographically been too far removed from him to have done much more.

We further find some guidance in the language of the *McSparran* Court. In commenting on the nature of a collusive appointment, the Court stated:

"He is not chosen because of his capacity to manage the property of his ward, and indeed need have no experience in the management of property. He is outside the jurisdiction of the court which is to supervise his nominal activity. In truth none of the considerations which normally lead to the selection of a guardian affects the local appointing court's determination because it knows that in the 'manufactured' diversity case the guardian is not expected to manage any property for his supposed ward and usually will not continue in office or exercise any real function after any funds are recovered in the litigation. \* \* \*"

Furthermore, absent the appointment of the out-of-state guardian in this case the suit is wholly local in nature. The minor and his parents all resided in Pennsylvania at the time of the accident and Pennsylvania is the residence of the de-

---

A. *I can't remember* exactly offhand *any particular time as to any particular amount,* but it has been a financial burden to her to get him to the doctor.

Q. That's all I have." (Emphasis added.) (Dep. pp. 40, 41 and 42)

11. Compare Mrs. Butler's age as recited in the petition for appointment of a guardian filed in 1967 (28 years) with Mrs. Goddard's age when deposed in 1969 (32 years). (Dep. p. 4)

fendant. Where the controversy as here is essentially local, one of the reasons for diversity jurisdiction, namely the prevention of discrimination against out-of-state litigants, does not exist. *McSparran, supra*, 402 F.2d at 876; Lumberman's Mutual Cas. Co. v. Elbert, 348 U.S. 48, 53–55, 75 S.Ct. 151, 99 L.Ed. 59 (1954) (Concurring opinion, Frankfurter, J.).

 The fact that the guardian, Mrs. Butler, is an aunt of the minor plaintiff is not controlling or conclusive. Groh v. Brooks, *supra*; Richards v. Dervarics, *supra*. The "scope" of Ellon Butler's powers and duties here are obviously limited to this suit. She not only has had no special "experience" but has, in fact, had no experience whatever in this field. Thus, her appointment fails to meet one of the important tests suggested in Groh v. Brooks, *supra*. Here, both parents were and are living and there are, therefore, "non-diverse" parties who might normally be expected to represent the child.[12] The mere fact that the parents have "confidence" in Mrs. Butler is an insufficient justification for the out-of-state appointment here, absent any special qualification in her to act in this capacity. Neither can their lack of "confidence" in each other justify making this a diversity case especially considering that the other factors here mitigate heavily against diversity. To hold otherwise may well result in a "multiplication of 'manufactured' diversity cases"[13] in which non-resident aunts and uncles will appear as parties-plaintiff contrary to the spirit, logic and purpose of the *McSparran* and *Groh* decisions. Moreover, this is a strictly local action in which suit is already pending in Chester County. Unlike the situation in Richards v. Dervarics, *supra*, the minor plaintiff will incur no additional expenses and his case will not be subject to any joinders not already on the record. The plaintiffs have not satisfied the burden resting upon them in light

of the presumption against federal jurisdiction. Artificial diversity appears to have been created.

Therefore, we are compelled to find that there was manufactured diversity and will grant the defendant's motion to dismiss the plaintiff's complaint for lack of jurisdiction.

---

12. Their estrangement does not, in our opinion, sufficiently explain Mrs. Butler's appointment.

13. McSparran v. Weist, *supra*, 402 F.2d at 873.