Helen Y. LAWSON, Administratrix of the Estate of Peggy Y. Rothenberger

v.

Thomas R. MORGAN

v.

Robert W. SCHEID and Kenneth L. Scheid.

Civ. A. No. 72–1121.

United States District Court, E. D. Pennsylvania.

Jan. 4, 1973.

Arthur L. Jenkins, Jr., Smith, Aker, Grossman, Hollinger & Jenkins, Norristown, Pa., for plaintiff.

Joseph H. Foster, Robert R. Reeder, White & Williams, Philadelphia, Pa., for defendant Thomas R. Morgan.

Richard R. High, Philadelphia, Pa., for defendant Kenneth L. Scheid.

Albert L. Bricklin, Philadelphia, Pa., for defendant Robert W. Scheid.

## MEMORANDUM OPINION

WEINER, District Judge.

The present matter is before this Court upon the motion of the defendant, Thomas R. Morgan, to dismiss the complaint of the plaintiff in a wrongful death and survivor's action. The contention of the defendant is that this Court does not have jurisdiction to hear the matter in light of the doctrine of "manufactured diversity" as enunciated in McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), cert. denied sub nom., Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969).

■■ The relevant facts in this case are as follows: the decedent, Peggy Y. Rothenberger, was fatally injured in an automobile accident in Carbon County, Pennsylvania, on March 11, 1972. At the time of her death, decedent was a resident of Montgomery County, Pennsylvania. The defendant Morgan is a resident of Northampton County, Pennsylvania. One month after the accident, Helen Y. Lawson, a sister of the decedent and a resident of Townsend's Inlet, New Jersey, was appointed administratrix of decedent's estate.[1]

Defendant, as noted, has moved this Court to dismiss the complaint for lack of jurisdiction on the ground that Mrs. Lawson was appointed administratrix solely for the purpose of manufactured diversity.

Title 28 U.S.C. § 1359 provides:

"A district court shall not have jurisdiction of a civil action in which a

1. At oral argument, counsel for the defendant first raised the issue of Mrs. Lawson's residence and questioned the validity of her status as a New Jersey resident due to the fact that she was registered to vote in Pennsylvania, that she still carried a Pennsylvania driver's license, and that she owned property in Pennsylvania. However, it is the understanding of this Court that in order to bring about a change of citizenship from one state to another, there must only be residence in the new domicile and intention to remain there permanently or indefinitely, and that both physical presence and animus manendi in the new location must concur. Zellem v. Herring, 97 F. Supp. 103 (W.D.Pa.1951). The items which were detailed by the defendant as indicating that residence in New Jersey was not present are not dispositive of the question but are merely factors to be considered by the Court in making its determination. Given the scanty record which has been developed on this point, and the fact that Mrs. Lawson moved to New Jersey prior to the accident and has announced her intention to remain there indefinitely, we must conclude that Mrs. Lawson is a bona-fide citizen of New Jersey for the purposes of this action.

party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

In McSparran v. Weist, *supra,* the Third Circuit Court of Appeals clearly held that the appointment of an out-of-state guardian solely to create diversity jurisdiction violates 28 U.S.C. § 1359. The manufactured character of the asserted diversity was conceded in *McSparran.* However, the Court observed that cases would follow in which there would be no such concession and that, in such circumstances, it is the duty of the district court to make the necessary factual determination, *id.* at 875; Groh v. Brooks, 421 F.2d 589, 594–595 (3d Cir. 1970).

■■ As a result of her invocation of federal jurisdiction, the burden rests upon the plaintiff to prove all the necessary facts to sustain that jurisdiction. McSparran v. Weist, *supra,* 402 F.2d at 875; Renner v. Vitcov, 339 F.Supp. 1020, 1021 (E.D.Pa.1972). In *Mc-Sparran,* the Circuit Court emphasized the considerable weight of this burden and stated that a Federal Court is presumed to be without jurisdiction "unless the contrary appears from the record," particularly in those cases where diversity jurisdiction may infringe upon the jurisdiction of state courts. McSparran v. Weist, *supra,* 402 F.2d at 876. In light of these considerations, the Third Circuit, in Groh v. Brooks, *supra,* 421 F.2d at 595, indicated certain guidelines which may usefully be employed by the district court in determining whether diversity has been "manufactured":

"In determining whether or not diversity has been artificially created, . . . *inter alia,* such factors as the identity of the representative and his relationship to the party represented; the scope of the representative's powers and duties; any special capacity or experience which the representative may possess with respect to the purpose of his appointment; whether there exists a non-diverse party, such as a parent in a suit for injuries to a child, who might more normally be expected to represent the interests involved; whether those seeking the appointment of the representative express any particular reason for selecting an out-of-state person; and whether, apart from the appointment of an out-of-state representative, the suit is one wholly local in nature."

Ultimately, however, it is the understanding of this Court that these criteria are not exclusive, that no single factor is dispositive of the issue, and that a district court is thereby required to exercise its discretion in determining the presence or absence of artificial diversity.

■ Turning to the facts of the case *sub judice,* the following emerges: (1) Mrs. Lawson, the administratrix, lived in Pennsylvania until February, 1972, one and one-half months prior to the death of her sister, when she moved to New Jersey. For the last twenty-two years she operated a dress shop in Norristown, Pennsylvania and, sometime in 1970, she turned over the operation of the shop to the decedent. Mrs. Lawson continued to do the buying for the shop and to work intermittently in it. Following the death of her sister, Mrs. Lawson resumed her operation of the dress shop and began to train another sister to assist her in running the store. She also continued to buy for the shop and began, a few months later, to train the deceased's husband to do the buying and to handle the bookkeeping operation. In addition, it appears from Mrs. Lawson's deposition that, following the death of the decedent, it was incumbent upon Mrs. Lawson to take the above steps if the business were to survive. (2) Mrs. Lawson began to operate the shop immediately after the funeral and prior to her appointment as administratrix. (3) According to the deposition of J. Brooke Aker, Esq., attorney for the decedent's estate, decedent's husband was not capable of carrying out the duties of administrator following the funeral and that the need for filing letters of administra-

tion was immediate in order to collect a $5,000 death benefit payable to the estate. As the extent of the husband's period of mourning and emotional upset was uncertain, Mr. Aker felt obliged to appoint some other responsible individual to administer the estate. (4) The deceased's husband returned to his work one month after the funeral. (5) In her capacity as administratrix, Mrs. Lawson signed checks and paid bills in the management of both the estate and the dress shop. Mrs. Lawson also executed the inheritance tax return and made the ultimate decision to approve a short administration of the estate and, thereby, to incur the risk of future personal liability. Mr. Aker's deposition further indicates that the assets of the decedent's estate were not limited to the wrongful death and survival action. (6) Mr. Aker also stated that one other factor which he took into consideration in his decision to seek the appointment of Mrs. Lawson as administratrix was Mr. Aker's own close friendship with decedent's husband and his personal reluctance to be forced into a highly emotional situation each time it became necessary to confer with the administrator of the estate in connection with that estate.

An analysis of these factors, together with a careful reading of both Mrs. Lawson's and Mr. Aker's depositions leads this Court to conclude that this case does not fall within the concept of "manufactured" diversity as enunciated in *McSparran, supra,* and that federal diversity jurisdiction was properly invoked.

It seems evident that Mrs. Lawson was not selected to administer the estate solely for the purpose of creating diversity. She is an experienced businesswoman who was intimately involved in the business affairs of the decedent long before the fatal accident. She was obviously quite close to the decedent and her family for many years, she acted immediately to help in preserving the assets of the estate, and she appears to be a capable and concerned person who is ideally situated to serve as administratrix. It would be necessary to stretch the facts to an inordinate degree for this Court to equate Mrs. Lawson's position with that of the straw parties which were the subject of the *McSparran* decision and its progeny. Mrs. Lawson's duties went much further than simply the lending of her name for the purposes of gaining diversity; her functions were numerous, often involving the making of some onerous decisions on her part, and they cannot be said to consist solely of the representation of the estate in the litigation of the instant case.

We can accept the defendant's argument that the emotionally distraught condition of decedent's husband is not itself sufficient justification for the appointment of an out-of-state administrator. But this condition does not appear to have been the sole reason for Mrs. Lawson's appointment, although we can assume that it was influential in this decision. An examination of other cases discussing this very point do not lend support to the defendant's position. In Hoffman v. Lenyo, 433 F.2d 657 (3d Cir. 1970), decedent was survived by her parents and three aunts who were citizens of Pennsylvania and more closely related to her than was the administrator of the estate. The appointment was not made until 10 months after death and less than a week before the filing of suit in the state court. Although the emotional condition of the parents was used to justify the appointment, the Court pointed out that, in fact, the appointment was made at the request of the attorney for the decedent's parents. In Kane v. Cameron, 329 F.Supp. 933 (E.D.Pa.1971), the Court found that artificial diversity jurisdiction had been created specifically for the purposes of contemplated legal action and that the administratrix, decedent's sister-in-law, had no special capacity or experience with respect to her appointment. These considerations, in addition to the fact that the main asset of the estate was the lawsuit, appear to have been far more influential upon the Court's decision than was the fact that the plaintiff at-

tempted to justify the appointment on the basis that the decedent's wife was emotionally upset and supposedly unable to carry out the duties of administratrix.

This Court is impressed by the reasons given by the administratrix for her appointment. Clearly, we are here faced with an essentially local controversy, but this factor alone cannot be determinative. It is clear from an examination of the record that Mrs. Lawson was not appointed solely for the purposes of creating diversity and that her duties as administratrix were substantial. Indeed, given the facts of this case, this Court itself would be hard pressed to conclude that Mrs. Lawson was not the most appropriate person to serve in this capacity. Therefore, it is our conclusion, that the plaintiff has met her burden of establishing the presence of diversity jurisdiction and we reject the contention of the defendant that the sole reason for the appointment of Mrs. Lawson was to confer jurisdiction upon this Court.