William S. **DICKSON**, J. Aubrey Dickson, Jr., and Charles E. Bullock, Plaintiffs,

v.

**TATTNALL COUNTY HOSPITAL AUTHORITY, Defendant.**

Civ. A. No. 2572.

United States District Court, S. D. Georgia, Savannah Division.

Aug. 17, 1970.

Milton A. Carlton, Swainsboro, Ga., for plaintiffs.

John M. Tatum, Savannah, Ga., for defendant.

## ORDER

LAWRENCE, Chief Judge.

"A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359.

In the instant case defendant has moved to dismiss the complaint for lack of jurisdiction in that the plaintiffs were improperly or collusively made by an assignment for the purpose of invoking such jurisdiction.

The plaintiffs are citizens of Texas and are members of an architectural and engineering firm. Prior to July 18, 1969, James W. Buckley, an architect who lived in Georgia, was a member of the partnership. On that date he resigned to establish his own architectural firm in this State where he resides.

While Buckley was a member of the plaintiff partnership an owner-architect agreement was entered into in 1968 between the firm in question and Tattnall County Hospital Authority. The architectural work was to be performed in stages—schematic design, design development, construction document, bidding, and, finally, the construction phase which the architects were to supervise. (Deposition of James W. Buckley, p. 10). The firm prepared schematic studies and design development documents consisting of plans, elevations and an outline of specifications. It contends that 35% of the contemplated architectural work was performed.

At this point the construction of the hospital encountered a serious obstacle in the way of a controversy as to its site. The people on the Glennville side of the County wanted it built there. People in the Reidsville area did not. The project was abandoned. The firm

of Dickson, Dickson, Bullock and Buckley was not paid for services performed by it and expenses incurred. Plaintiffs sue for $27,307.28 based on a fee of 7.5% of the total construction cost of the project.

Buckley, as stated, withdrew from the firm in July, 1969. He purchased the Georgia and South Carolina assets. As part of the liquidation certain accounts were assigned to him. If collected, one fourth of the proceeds would go to each partner or former partner. Subsequently, a different arrangement was entered into. Some of the delinquent accounts were interchanged among the parties by assignments and on December 12, 1969, the Tattnall Hospital Authority account was assigned to the three Texas partners. Buckley testified (p. 8) that at that time litigation was contemplated and that he foresaw no way of collecting the account without a lawsuit. He said, "I'm not interested in getting into a lawsuit where I practice." He did not want to enter into a lawsuit against the Authority in the name of the old firm.

■ Shortly after the re-assignment of accounts the present action was instituted by Dickson, Dickson and Bullock. Defendant challenges the Court's jurisdiction by reason of 28 U.S.C. § 1359, contending that there is improper or collusive assignment. The purpose of that statute which was enacted in 1948 was to prevent the manufacture of Federal jurisdiction by the device of assignment. Under the old "Assignee Clause" (28 U.S.C. § 41(1) (1940 ed.)) district courts were denied jurisdiction of any suits to recover on any chose in action in favor of an assignee unless the action might have been prosecuted in the federal court if no assignment had been made. The Congressional approach was to "forbid the grounding of jurisdiction upon *any* assignment, regardless of its circumstances or purpose." Kramer v. Caribbean Mills, 394 U.S. 823, 826, 89 S.Ct. 1487, 1489, 23 L.Ed.2d 9. A subsequent pre-1948 statute (28 U.S.C. § 80 (1940 ed.)) required dismissal of an action whenever "it shall appear to the satisfaction of the * * * court * * * that the parties to said suit have been improperly or collusively made or joined * * * for the purpose of creating" [federal jurisdiction].

The Reviser's Note to § 1359 says that the old "Assignee Clause" as amended [28 U.S.C. § 80 (1940 ed.)] is a "jumble of legislative jargon." "Its difficult language," remarks another commentator, "gave rise to a vast, and highly technical, body of decisions." Wright, Law of Federal Courts (1970), p. 100. See also the review of this subject in 3A Moore's Federal Practice, § 17.05, pp. 157-207.

I find equal difficulty as to § 1359. At least I do in the present case. As Judge Leddy has understatedly and recently observed, "The body of case law surrounding this provision is presently in a state of flux." Farrell v. Ducharme, D.C., 310 F.Supp. 254, 256. There is no real problem in cases like Kramer v. Caribbean, supra. There a foreign corporation for a consideration of $1.00 assigned its entire interest under a contract to the attorney in this country who brought the suit. On the same day such assignment was made the lawyer executed an agreement in which he promised "as a Bonus" to pay to the assignor 95% of the net recovery by him in his suit on the assigned cause of action. Similarly, the case of Ferrara v. Philadelphia Laboratories, Inc., D.C., 272 F.Supp. 1000 (Judge Leddy), affd. 2 Cir., 393 F.2d 934, does not present any grave difficulty in applying § 1359 to its special facts. In that litigation certain residents of Vermont assigned in trust their tort claims to a New Jersey trustee for the purpose of creating diversity in an action in a federal court.

The assignments in these two cases were patently colorable and plaintiff by the device of an assignment was improperly or collusively made a party. In Lester v. McFaddon, 4 Cir., 415 F.2d 1101, 1104, Chief Judge Haynsworth said, "Such a person is indeed a 'straw party' * * *. We think his appointment for the purpose of creating appar-

ent diversity of citizenship was an improper manufacture of jurisdiction within the meaning of § 1359. * * * We need not give the statute a reading which would frustrate the congressional intention to exclude from the diversity jurisdiction purely local controversies with no more than a contrived interstate appearance." That section of U.S.C. embodies the principle that the federal courts should not be engulfed with controversies between citizens of the same state who seek to invoke jurisdiction through "sham transactions." O'Brien v. Avco Corporation, 2 Cir., 425 F.2d 1030, 1033.

■ In view of defendant's challenge of jurisdiction in this case it is my duty to inquire into the circumstances and conditions surrounding the assignment in order to determine whether plaintiff has carried the burden of proof in establishing the facts on which jurisdiction appears. See Steinberg v. Toro, D.C., 95 F.Supp. 791, 795; Ferrara v. Philadelphia Laboratories, Inc., *supra*.[1] On the basis of the oral argument, the pleadings and the deposition and affidavit of Mr. Buckley I think plaintiffs have carried that burden.

■ While I have no doubt that the re-assignment of the account was effectuated with diversity jurisdiction in mind, it does not follow that the assignment of the claim to the plaintiffs was "improperly or collusively made." The withdrawal of Buckley from the architectural firm in July, 1969, had nothing whatever to with creation of federal jurisdiction in this case. Upon dissolution of the partnership the method of winding up its affairs was a matter within the discretion of its members. Generally speaking, all of the partners at the time the obligation was incurred are proper and necessary parties in an action after dissolution to enforce a firm claim. However, where a partner has assigned his interest in the claim to another he is not a necessary party. 68

C.J.S. Partnership § 376, p. 888. The question as to who are necessary or proper parties in a suit on a partnership claim after dissolution is a procedural morass into which there is no need to wander or flounder.

When Buckley withdrew from the firm the continuing partnership was Dickson, Dickson and Bullock. They were responsible for full performance of the contract. Each of these remaining partners was a citizen of Texas. In winding up the affairs of the old firm certain delinquent accounts were assigned to Buckley, the Tattnall Authority account being included. Subsequently, during the liquidation process there was a reshuffle of the account assets. That account went to the old firm. The Texas partners alone have any interest in a recovery here. Buckley has divested himself of all interest in the outcome of this lawsuit. Plaintiffs are the real parties in interest. They are not a mere collection agent for the assignor. This is no case of sham, fictitious or colorable assignment.

"If the assignment or transfer is a bona fide, actual transaction whereby the transferee or assignee becomes the real party in interest, section 1359 is not applicable even though the transfer or assignment may have been motivated in whole or in part by a desire to create diversity of citizenship for purposes of litigation." National Surety Corporation v. Inland Properties, Inc., D.C., 286 F.Supp. 173, 183. See also Henley & Co. v. Miller Golf Equipment Corporation, D.C., 300 F.Supp. 872, 875–877.

While the allocation of the account created diversity of citizenship, one of the motives was Buckley's understandable reluctance to become involved in litigation in Georgia against his former clients. The partners could allocate the firm's accounts as they saw fit upon dissolution and could do so with an eye to federal diversity jurisdiction in the case of an assignee. A defaulting party to a

---

1. *Cf.* Duffy v. Currier, D.C., 291 F.Supp. 810 holding that the burden of proof is on defendant where collusive jurisdiction is alleged.

contract is not in a particularly strong position to tell his creditor how his delinquent accounts should have been handled in the winding up of a partnership.

Finding no improper or collusive assignment under the facts, the motion to dismiss is denied. Jurisdiction over the present action is retained.

Plaintiffs have moved for summary judgment both as to liability and for the amount sued for based on the pleadings and the deposition of Buckley. Defendant has made no counter showing. Its answer denies the indebtedness that is alleged. At the argument I suggested that additional evidence might be presented as to the construction cost estimate on which the 7.5% fee is based to the extent of 35% thereof. The statement of account shows an estimated amount of $962,121.57. I suggested that additional testimony be adduced in that respect, preferably from Mr. Bullock, one of the plaintiffs. Counsel stated that his deposition could be taken. Decision on the motion for summary judgment is accordingly reserved.