Irving **ISDANER**

v.

Robert **BEYER** et al.

Lawrence **ISDANER**

v.

Robert **BEYER** et al.

Civ. A. Nos. 71–28, 78–29.

United States District Court,
E. D. Pennsylvania.

Aug. 5, 1971.

Jeffrey M. Stopford, Philadelphia, Pa., for plaintiffs.

Tyson W. Coughlin, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

JOHN W. LORD, Jr., Chief Judge.

The above named plaintiffs have filed separate suits in which each seeks to recover damages for an alleged breach of their respective employment contracts. While both plaintiffs are domiciled in Pennsylvania, none of the defendants, who are all partners in the accounting firm of Touche, Ross & Co., are residents of Pennsylvania. Jurisdiction is based on 28 U.S.C.A. § 1332, diversity of citizenship and amount in controversy in excess of $10,000.00.

Defendants, who are all represented by the same counsel, have moved to dismiss the actions. Succinctly stated, defendants take the position that all of the partners of the accounting firm, as joint obligors on the employment contracts, are indispensable parties within the meaning of Fed.R.Civ.P. 19 and that since at least twenty-five (25) of the partners are domiciled in Pennsylvania the necessary diversity of citizenship does not exist.

Rule 19, as revised in 1966, requires the Court to make a two-step analysis in determining the "joinder of persons needed for just adjudication." First, Rule 19(a) identifies those persons who should be joined if feasible. It would appear clear, and neither party has challenged it in this case, that joint obligors, as contrasted with persons who are jointly and severally liable, should be joined if feasible. In the instant case the joinder of the other partners, including the Pennsylvania ones, would oust the court of jurisdiction. In such a case the Court must look to the criteria enumerated in subsection (b) of the rule to determine whether or not the action should proceed without the nonjoined party or parties. Rule 19(b) specifically provides: "[i]f a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

Before discussing the criteria of subsection (b) which the Court feels are relevant in the case at bar, we note that the "concern of the amended rule is with the practical realities of joinder" and that "the new rule requires the court to face squarely the pragmatic considerations which properly should be controlling." 2 Barron & Holtzoff, Federal Practice and Procedure, ¶¶ 511, 512 (Wright ed.) (Supp.1969). Under the new rule a realistic analysis of the facts of the case, rather than the conceptual classifications of "indispensable," "necessary" and "proper," should govern the Court's determination. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed. 2d 936 (1968); Bennie v. Pastor, 393 F. 2d 1 (10th Cir. 1968); Snyder v. Epstein, 290 F.Supp. 652 (E.D.Wis.1968); Advisory Committee Note No. 3.

The first factor is whether the judgment might be prejudicial to the absent person or persons or those already parties. In the instant case the Court finds that as a practical matter the nonjoined partners will not be prejudiced. Since the named partners, in the event of a judgment for the plaintiffs, would have a right to contribution from the

nonjoined partners (Taylor v. Richman, 395 Pa. 162, 149 A.2d 69 (1959)), the interests of the nonjoined partners may be adversely affected. However, the Court finds that a realistic analysis of the factual situation in this case indicates that the adverse effect is more theoretical than practical. First, the Court finds that in the practical sense the nonjoined partners will have their day in court. Since the present defendants, who reside in such diverse states as New York, New Jersey and Illinois, all have the same counsel, it is clear that if the other partners were joined they would also be represented by that firm. There is no conflict between the various partners' interests and counsel, a leading law firm in the city, will act as diligently, and its advocacy will be just as sagacious, whether it represents four partners or all of the partners.

Counsel for the defendants also asserts that the named partners may be prejudiced in that they may be exposed to sole responsibility for the partnership debt. This is theoretically possible in that in at least two of the states where the named partners reside, their separate property is subject to levy and execution to satisfy a judgment against them for joint liability. (Illinois and New Jersey). However, as with the nonjoined parties, this Court finds that an analysis of the facts does not reveal any real likelihood of prejudice. In 1967, when the alleged employment contracts were entered into, the defendants were the Managing Partner, the National Director of Administration and Office Operations, the National Director of Personnel and the National Director of Accounting and Auditing. It would appear to be totally unrealistic to predicate the result in this case upon the assumption that plaintiffs would levy and execute on the joined partners' separate property in order to satisfy any possible judgment. The amount in controversy (plaintiffs' aggregate demand is approximately $200,000.) is such that it would be paid out of the partnership assets which would negate any need to levy and execute on any separate property. Furthermore, we find no prejudice to the defendants who have already been joined in terms of potentially requiring them to bring suit to enforce their right to contribution from the other partners. Certainly the defendants would not be forced to take this action by their partners. Nor does the Court find there to be any real danger of repetitive litigation with resulting inconsistent judgments. If the defendants prevail, any subsequent suit between plaintiffs and other partners or the partnership itself, would appear to be barred by the doctrine of collateral estoppel. *See* Provident Tradesmens Bank & Trust Co. v. Lumbermens Mut. Cas. Co., 411 F.2d 88 (3rd Cir. 1969); Lynne Carol Fashions, Inc. v. Cranston Print Works Co., Civil Action No. 69–1535 (E.D.Pa., filed October 20, 1970).

Another consideration which the subsection enumerates is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Defendants contend that since the plaintiffs could clearly bring the action against the partnership in the state courts of Pennsylvania, the Court should dismiss these actions where all of the parties are not subject to the suit. However, just as the lack of an alternative forum should not per se dictate that the suit should be maintained, 3A J. Moore, Federal Practice ¶ 19.7–2 [4] (2d ed. 1970), we find that a suit should not be dismissed for the sole reason an alternative forum is available. As the rule itself states, the Court must determine, utilizing a pragmatic analysis, whether "in equity and good conscience the action should proceed among the parties before it  *  *  *." Our analysis of the facts of this case indicates that it should proceed.

Defendants have cited in support of their position the case of Federal Resources Corp. v. Shoni Uranium Corp., 408 F.2d 875 (10th Cir. 1969). In that case the Circuit Court reversed the Dis-

trict Court and dismissed the action on the grounds that the citizenship of the nonjoined partner, who they found to be indispensable, would oust the court of jurisdiction. The court utilized the factors enumerated in subsection (b) and concluded that the suit should not have been continued in the absence of the nonjoined partner. However, in that case there were only two partners, albeit corporations, with plaintiff claiming that the joined partner unjustly enriched itself in the amount of approximately two million dollars. The law of the relevant state provided that a valid judgment against one partner could be executed against partnership property even though neither the partnership nor the remaining partner was a party to the suit. The court concluded its analysis by stating, "American Nuclear (the nonjoined partner) might here be economically wiped out without ever having a day in court." Federal Resources Corp. v. Shoni Uranium Corp., *supra* at 878. This Court finds itself in complete accord with that court's application of the facts before it and to the factors established by Rule 19(b). However, the facts of the case in issue are so distinguishable that, except for the general holding that the nonjoined partner was indispensable and since his joinder would defeat jurisdiction the suit should have been dismissed, it lends little support to defendant's position. The Court finds the critical distinction to be that unlike the *Federal Resources* case we have, after a pragmatic analysis of the facts of this case, determined that: (1) the nonjoined partners will, in a very real sense, have their day in court and (2) the nonjoined partners are certainly

not exposed to "be[ing] economically wiped out" as a result of this litigation.[1]

The Court's attention has also been brought to the case of Brown v. Moore, 247 F.2d 711 (3rd Cir.), cert. denied 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957). While we find that the *Brown* case does not support plaintiffs' position in that it was a tort action where joint tort-feasors are both jointly and severally liable, we also conclude that it does not advance defendants' position. The court did state that "[i]f the suit was for breach of contract the liability of the partners might have been construed to be joint, not joint and several as would be their liability in tort [citation omitted]. All the partners would then have been indispensable parties." Brown v. Moore, *supra* at 717 n. 7. As this Court noted the Brown case was a tort action and the court's statement with regard to contract liability is dicta. More importantly, however, to isolate such a passage, and base a result on it without having the benefit of that court applying Rule 19(b) criteria to a factual situation or without an independent examination of the facts before the Court in the pending case would run counter to one of the avowed goals of the new rule. As the Advisory Committee noted, the changes in the rule were designed to avoid the pitfall of having abstract characterizations rather than pragmatic considerations dictate the results of a case. See Advisory Committee Note No. 3. For the aforestated reasons the Court finds that "in equity and good conscience" the suit should proceed among the parties presently before it.

[1]. In 1966 the firm's directory listed over 200 partners. Since the total demand is only $200,000, each partners' exposure is approximately $1,000.