**KAPLAN COMPANY**

v.

**INDUSTRIAL RISK INSURERS**

and

**Factory Insurance Association.**

Civ. A. No. 78–4180.

United States District Court,
E. D. Pennsylvania.

April 24, 1980.

Mervin J. Hartman, David N. Hofstein, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

Joseph A. Gerber, Cozen, Berger & O'Connor, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

██ It is settled law that when an unincorporated association sues or is sued in federal court, its citizenship for diversity purposes is deemed to be that of each of its members.[1] This action on a certificate of insurance presents an important and difficult question concerning the scope of our diversity jurisdiction: where an unincorporated association is sought to be sued, but where some of its members are not of diverse citizenship from plaintiff, may the plaintiff preserve its choice of a federal forum under 28 U.S.C. § 1332 by suing only those members of the association who are diverse from it, or, conversely, must an action so framed be dismissed for lack of complete diversity?[2] Put differently, the question is whether the limitations placed on diversity jurisdiction, the case law, the factual pattern described, or general policy considerations require that plaintiff sue the unincorporated defendant as an entity, even though federal jurisdiction may thus be lost.[3]

Plaintiff, Kaplan Company, is a Pennsylvania corporation with its principal place of business in Pennsylvania. It seeks to recover as loss payee on a certificate of insurance issued on August 1, 1974, through Factory Insurance Association, now known as Industrial Risk Insurers (IRI),[4] an amalgam of insurance companies that have joined together in order to underwrite large risks a single insurance carrier would be unwilling or unable to undertake. Syndicate policies issued by IRI provide that each member company is liable on each IRI policy written for a fixed percentage equal to the percentage of that member's participation in IRI. The loss that is the subject of this lawsuit occurred on November 20, 1976, when a fire damaged buildings and equipment on property owned by plaintiff and leased by it to SCM Corporation. Plaintiff claims to have sustained damages of some $490,000, which represents the cost of repairing the damage to its property. No money was paid to plaintiff pursuant to the policy at issue, though defendant association issued a check for $21,759.42 to SCM Corporation in settlement of the claim for loss resulting from the fire.

Suit was filed on December 14, 1978. In its answer, IRI averred *inter alia* that the court lacked jurisdiction of the subject matter. The question of jurisdiction was again raised at a status call in August, 1979, following which defendant provided plaintiff with documents revealing that certain IRI

---

1. *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889); *Plechner v. Widener College*, 569 F.2d 1250 (3d Cir. 1977).

2. All plaintiffs must be of diverse citizenship from all defendants. *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806).

3. This question is distinct from the question of capacity to be sued. Fed.R.Civ.P. 17(b) provides that "the capacity . . . to sue or be sued shall be determined by the law of the state in which the district court is held . . . ." Though it has been written that Pennsylvania law requires that an unincorporated association sue or be sued as an entity, *Underwood v. Maloney*, 256 F.2d 334 (3d Cir.), *cert. denied*, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1958), the rule would seem to apply only where, as in *Maloney*, plaintiff seeks to sue an unincorpo-

rated association as a class or where plaintiff, while seeking only relief that will perforce come from the association, attempts to name as defendants individual members of the association. It is clear that Pa.R.Civ.P. 2153(c) contemplates and permits actions against individual members of an unincorporated association where, as here, *see* discussion *infra*, the members may be held liable in their individual capacities. *See, Lloyd A. Fry Roofing Co. v. Textile Workers Union*, 149 F.Supp. 695 (E.D. Pa.) *reh. denied* 152 F.Supp. 19 (1957); *Drobney v. Trustees of F. H. Buhl Club*, 10 D & C 2d 84 (1957).

4. Factory Insurance Association merged with IRI on December 1, 1975. The loss that is the subject of this lawsuit occurred on or about November 20, 1976. For purposes of this opinion, we treat Factory Insurance Association and IRI as a single defendant.

members were, like plaintiff, Pennsylvania corporations. These members hold an approximate 13% interest in the association (and hence are liable for 13% of any cognizable loss sustained by an insured). In October, 1979, defendant filed a motion to dismiss for lack of subject matter jurisdiction. Plaintiff countered with its own motion seeking to amend its complaint to add as defendants individual diverse members of IRI.[5]

Plaintiff concedes that since certain members of IRI are Pennsylvania corporations, IRI's presence in the lawsuit deprives this court of jurisdiction. It argues, however, that its additional proposed amendment, *see* note 5, cures the jurisdictional defect and that there are no policy reasons to prevent us from holding that our diversity jurisdiction can accommodate the lawsuit so framed. Thus, plaintiff posits that the real issue before us is whether the nondiverse members are indispensable parties within the meaning of Fed.R.Civ.P. 19(b) in whose absence we cannot "in equity and good conscience" proceed.

Relying on certain district court decisions, notably *Isdaner v. Beyer*, 53 F.R.D. 4 (E.D.Pa. 1971) (John W. Lord, J.) and *Wilson Foods Corp. v. Gwinn*, No. 79–1844 (E.D.Pa. November 2, 1979) (Broderick, J.), plaintiff urges that the nondiverse members of IRI are not indispensable parties since under the syndicate policies each member is liable for a fixed percentage of any recovery and thus neither IRI nor any of its members will be harmed if it elects to pursue only 87% of its possible recovery.

Defendant rejoins that plaintiff's motion to amend amounts to no more than an attempt to manufacture jurisdiction, a practice made impermissible by statute, 28 U.S.C. § 1359, and by the case law. *McSparran v. Weist*, 402 F.2d 867 (3d Cir. 1968), *cert. denied sub nom. Fritzinger v. Weist*, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969). It argues that the amendment would allow suit against companies who neither issued the policy nor collected the premiums and against whom plaintiff has no grievance—in short, that the amended complaint seeks recovery from the wrong defendants.[6] Defendant further submits that the amendment plaintiff seeks would set a precedent with potentially serious ramifications on the insurance industry in that it would discourage the formation of associations such as IRI and thus make more expensive and more difficult to obtain insurance policies that cover major risks.[7] As a policy matter, defendant argues that the grant of federal jurisdiction is a limited and restrictive one and ought not to be construed as extending to such suits as plaintiff now proposes to bring. Finally, defendant argues that whether or not the nondiverse members of IRI are indispensable parties is an issue that will not be ripe for adjudication unless and until we permit plaintiff's amendment.

Although we have not found the issue to be free from doubt, for the reasons that follow we have concluded that the plaintiff may proceed in the absence of the association *qua* association and those of its members whose presence would destroy diversity.

## II. *Discussion*

In addressing the contentions of the parties, we proceed as follows. First, we shall consider the question whether the nondiverse IRI members or IRI itself are indispensable parties under Fed.R.Civ.P. 19, for if they are, the action must be dismissed for

---

**5.** The amended complaint as submitted retains Factory and IRI as named defendants. IRI correctly points out that as long as it is included as a defendant, the jurisdictional defect is not cured, even though the nondiverse members have not been named individually. Thus, plaintiff now seeks leave to submit a new amended complaint omitting Factory and IRI altogether.

**6.** Defense counsel concedes, however, that his firm would defend the individual named members if the amendment is permitted and jurisdiction retained.

**7.** The reasons for this assertion are not entirely clear. Apparently, defendant believes that the business of IRI and the relationship of its members *inter se* would be disrupted or at least adversely affected by plaintiff's strategem and that exposing joint venturers to suit in federal court on an individual basis would also inhibit membership.

lack of complete diversity.[8] We shall then consider whether notwithstanding a lack of formal defect, plaintiff's proposal to maintain federal diversity jurisdiction by the gambit of dropping IRI and several of its members as parties defendant should be rejected either because it constitutes manufactured diversity jurisdiction within the meaning of the case law, or on grounds of policy, *i. e.*, because plaintiff has made an attempt to expand federal jurisdiction beyond its proper bounds. In policy terms we shall also consider whether the possible impact of our ruling on the formation of associations such as IRI should affect our decision. Finally, we shall consider whether the amendment reframing the party structure should be deemed to relate back to the date the original complaint was filed.

### A. *Indispensable Parties Under Rule 19*

Fed.R.Civ.P. 19(a) ("Persons to be Joined if Feasible") provides by its terms:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject to the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Only if the nondiverse members of IRI (or IRI itself) can be said to be "persons to be joined if feasible" under Rule 19(a) need we proceed to determine whether they are also "indispensable parties" under Rule 19(b).

We think it clear that in this case the nondiverse members of IRI do not fall within the description of "persons to be joined if feasible" and that the Rule 19(b) determination need not be made.

First, we note that although in the absence of the Pennsylvania IRI members complete relief cannot be accorded among those already parties, Rule 19(a)(1), plaintiff has stated that it is satisfied to seek less than complete recovery in order to remain in the federal court. Thus, the interests sought to be protected under Rule 19(a)(1) are not implicated here. Second, though the nondiverse IRI members claim "an interest relating to the subject of the action," the unique division of liability among IRI members insures that their ability to protect that interest will be affected not one whit by any judgment that may be had here and precludes the possibility that the diverse IRI members will be subject to a risk of "double, multiple, or otherwise inconsistent obligations." Rule 19(a)(2). We are thus satisfied that the nondiverse IRI members—and IRI *qua* association—do not fall within the group of persons contemplated by Rule 19(a).

Even if we assume, however, that the nondiverse IRI members are "persons to be joined if feasible" under Rule 19(a), we do not find that they are likewise indispensable parties under Rule 19(b). In determining whether a party is to be regarded as indispensable, the court is directed by Rule 19(b) to consider *inter alia*:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate;

---

**8.** We do not agree with the defendant that the Rule 19 issue is not ripe for adjudication for several reasons. First, it was raised and considered at oral argument on these motions. Second, it is intimately related to the question whether plaintiff may amend or whether the lawsuit must be dismissed. Third, in view of the liberality of amendment permitted in federal courts at early stages of the proceedings, we would in any event grant plaintiff leave to amend. We thus feel it preferable to deal with the Rule 19 questions now, rather than after interpolation of another motion to dismiss.

fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The touchstone of Rule 19(b) is prejudice. However, the internal organization of IRI renders the possibility of prejudice to its diverse and/or its nondiverse members virtually nonexistent. Indeed, whatever protection IRI members might need is already provided by the provisions in their syndicate policies that limit the extent of each of their contributions toward any loss suffered by an insured. Since plaintiff has agreed to less than complete recovery, the question whether a judgment rendered in the absence of the nondiverse IRI members will be adequate is irrelevant.

Finally, we note that there exists a real question whether plaintiff will have an adequate remedy if the action is dismissed for nonjoinder; a cautionary suit in state court was not filed against IRI until some months after this action was commenced, and defendant has indicated that it will raise a statute of limitations defense in that action. The expiration of the applicable limitations period has been held relevant to a conclusion that plaintiff will not have an adequate remedy if the case is dismissed. *See* 7 Wright and Miller, *Federal Practice and Procedure*, § 1608 at 80 and cases cited therein. Thus, the factors identified in Rule 19(b) implicate the interests of defendants not at all and in fact weigh against dismissal. In view of the foregoing discussion, we find that the nondiverse members of IRI and IRI itself are not indispensable parties and that we can "in equity and good conscience" proceed in their absence.

The case law supports this conclusion. In *Isdaner v. Beyer*, 53 F.R.D. 4 (E.D.Pa. 1971) for example, then Chief Judge John W. Lord, Jr. permitted plaintiffs seeking to recover for breach of an employment contract to sue individual diverse members of Touche Ross, a partnership, even though all of the partners, some of whom were not diverse as to plaintiff, were jointly liable on the contracts at issue. More recently, in *Wilson Foods Corp. v. Gwinn*, No. 79–1844 (E.D.Pa. November 2, 1979), Judge Broder-

ick, relying on *Isdaner*, permitted plaintiffs to amend their complaint to drop a nondiverse partner of defendant partnership, thus preserving the court's jurisdiction. In neither *Isdaner* nor *Wilson Foods* were the nondiverse partners deemed to be indispensable parties though the possibility of prejudice to them was far greater than to the nonjoined IRI members here, for in those cases liability was joint and a judgment for plaintiff would necessarily have implicated the interests of the absent partners. *See also Prescription Plan Service Corp. v. Franco*, 552 F.2d 493 (2d Cir. 1977); *Jones Knitting Corp. v. A.M. Pullen & Co.*, 50 F.R.D. 311 (S.D.N.Y. 1970); *Hamond v. Clapp*, 452 F.Supp. 885 (S.D.N.Y. 1978).

In sum, we find no impediment in Rule 19, or in the cases interpreting it on similar facts, to the amendment plaintiff proposes. We note the observation of Judge Knapp in a similar context that "[F]or purposes of diversity, the citizenship of a partnership 'is determined not by the citizenship of all the partners but initially by the citizenship of those partners who are actually joined in the action and ultimately the citizenship of those who, as indispensable parties, must necessarily be joined.'" *Hamond v. Clapp, supra*, 452 F.Supp. at 886 (citation omitted). Since we have determined that the nondiverse IRI members are not indispensable parties, and since in their absence diversity at least in form exists, we think it clear that we may proceed unless to do so would in some way constitute an extension of our diversity jurisdiction beyond permissible bounds. We therefore turn to a consideration of that issue.

## B. *Manufactured Jurisdiction*

As noted above, defendant has suggested that the redefined action constitutes an attempt on the part of plaintiff to manufacture jurisdiction in contravention of 28 U.S.C. § 1359, which states:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

We do not believe the refashioned action comes within § 1359. Unlike the leading case of *McSparran v. Weist*, 402 F.2d 867 (3d Cir.), *cert. denied sub nom. Fritzinger v. Weist*, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1968), plaintiff here has not named as defendants straw or nominal parties with no interest whatsoever in the outcome of the litigation. These defendants are not designated "solely for the purpose of creating diversity of citizenship" but are sued because, should plaintiff prevail, they will be individually liable on the judgment. As the court observed in *McSparran*, 402 F.2d at 871, "[t]he desire of suitors to seek justice in the federal courts carries, of course, no stigma. Where actual diversity exists among the appropriate parties, the choice to resort to the federal courts rather than the state courts cannot be denied them. Nor does a barrier grow simply because an increasing number of litigants prefer the federal to the state jurisdiction." There is no indication in *McSparran*, nor in the language of 28 U.S.C. § 1359, that the concept of manufactured jurisdiction extends to cases where fewer than all possible defendants are sued, and we decline to so extend it.

### C. The Perimeters of Diversity Jurisdiction; Policy Considerations

Though defendant has argued that plaintiff's proposed amendment extends the scope of diversity beyond its proper bounds, the cases it has cited in support of its position in fact provide little guidance. In *Beautytuft, Inc. v. Factory Insurance Ass'n.*, 431 F.2d 1122 (6th Cir. 1970), for example, all members of defendant association were diverse from plaintiff, so the question whether plaintiff could seek recovery from fewer than all did not arise. In *Plechner v. Widener College*, 569 F.2d 1250 (3d Cir. 1977), the Third Circuit affirmed our dismissal of the American Bar Association as a defendant on the ground that some members of the ABA were not diverse from plaintiff. But there was no motion to amend to name the diverse members, who in any event would not have been liable for the alleged wrongs of the association.

Here, in contrast, because of the association agreement, individual members are individually liable on the policies issued through the association. Though Judge Fullam dismissed for lack of complete diversity a suit between plaintiff and our present defendant in *S. Weisbrod Lamp and Shade Co., Inc. v. Factory Insurance Ass'n.*, No. 75–3250 (January 16, 1976), there is no evidence that an amendment to cure the jurisdictional defect was ever contemplated or sought. In *Chase Manhattan Mortgage & Realty Trust v. Pendley*, 405 F.Supp. 593 (N.D.Ga. 1975), plaintiff, a business trust (held to be an unincorporated association for purposes of diversity analysis), sought to amend its complaint to substitute as plaintiffs the individual trustees, all of whom were diverse from defendants. The court dismissed the suit, holding that it was the citizenship of the holders of the beneficial shares that determined the citizenship of the trust rather than the citizenship of the trustees. Plaintiff's proposed amendment did not therefore cure the jurisdictional defect.

We have been pointed to no cases and have found none that have held such amendment as plaintiff seeks to be impermissible. Certainly, the scope of diversity jurisdiction is no more implicated here than in the partnership context, and in neither *Isdaner* nor *Wilson Foods* were the jurisdictional implications of suit against fewer than all possible defendants even discussed. Defendant contends that the partnership cases lack precedential value because, by virtue of the partnership contract and partnership law, each partner undertakes full liability for any act of the partnership and might expect to be sued as an individual, whereas that is not true for members of unincorporated associations. We do not find the distinction persuasive in this context or even apposite. A partnership is merely one kind of unincorporated association and is treated no differently than any other for purposes of diversity. *See Carlsberg Resources Corp. v. Cambria Savings and Loan Ass'n.*, 554 F.2d 1254 (3d Cir. 1977).

Nor do we find that the general policy considerations that are implicated whenever a litigant seeks to invoke diversity jurisdiction weigh against granting the amendment plaintiff seeks. Our consideration in this regard is informed by Judge Adams' discussion in *Carlsberg Resources Corp. v. Cambria Savings & Loan Association*, 554 F.2d 1254 (3d Cir. 1977) in which the court determined that for diversity purposes the citizenship of limited partners, as well as that of general partners, determined the citizenship of a limited partnership, even where the limited partners have no capacity to sue and be sued under the relevant state law. Rejecting the notion that state capacity to sue rules should play any role in determining the scope of federal jurisdiction ("the *most* elemental concern of the federal courts in evaluating the cases which come before them," *id.* at 1260) and stressing that whenever an inquiry involves the jurisdiction of the federal court "the presumption is that the court is without jurisdiction to entertain the suit," *id.* at 1257, Judge Adams concluded that considerations of judicial economy and federalism require that diversity jurisdiction be employed only where clearly appropriate. *Id.* at 1257, 1259, 1262. The philosophy expressed throughout *Carlsberg* is one of restraint lest there be a "relaxation of diversity requirements," *id.* at 1257, and "an extension of such jurisdiction to hitherto uncovered broad categories of litigants, with [a] resultant detriment to judicial economy and our system of federalism." *Id.* at 1259.

We have considered this case in light of the concern for federalism and judicial economy expressed in *Carlsberg*, but have concluded that plaintiff's amendment represents neither an extension of diversity nor a relaxation of its requirements.

■ As we have noted above, the courts that have considered similar amendments have uniformly permitted them and have not found the scope of their jurisdiction to be implicated in any way by such action. Though permitting such "partial" suits will potentially increase the amount of litigation in the federal courts, we do not read *Carls-*

*berg* as prohibiting that result where "actual diversity exists among appropriate parties." Rather, we believe that the concern for federalism and judicial economy expressed in *Carlsberg* becomes relevant only where—as in *Carlsberg* itself—the court must determine whose citizenship is to be counted for diversity purposes. We do not read the broad and general language in *Carlsberg* to require that an unincorporated association be sued as an entity in order to limit access to the federal forum. As Judge Hunter notes in his dissent in *Carlsberg*, federal courts still have jurisdiction in diversity cases, and we think that where, as here, the parties actually sued are both diverse from plaintiff and severally liable, the fact that plaintiff has opted for less than complete recovery should have no bearing on the jurisdictional question. Indeed, at least one commentator has suggested the course plaintiff here proposes to follow as a means of gaining access to the federal courts when an unincorporated association is a party. Comment, 45 U.Chi.L. Rev. 384, 393 (1978).

As for specific policy questions that may be implicated by the peculiar facts of this case, we do not find sufficiently compelling defendant's argument that to permit the suit to go forward in the absence of certain of its members will wreak havoc on the insurance industry by discouraging the formation of insurance associations that underwrite major risks. Since the outcome of the case will have no effect on the individual liability of any IRI members, and since it would require many and sizable judgments against the same members before there would be any perceptible effect on the balance of power *inter se*, we believe the result feared by defendant, even if cognizable on a motion to dismiss for lack of subject matter jurisdiction, is too remote and speculative to provide a ground on which to deny plaintiff's motion. Moreover, we think it unlikely that plaintiffs will flock to the doors of the federal courts seeking less than complete recovery from their insurance carriers and that should they do so, defendant and other similar associations will have sufficient knowledge of the phenomenon to

permit them to adjust their organization and structure to account for it.

■ Though defendant complains that plaintiff's refashioned lawsuit in effect seeks recovery from the wrong parties because it was IRI who issued the policy and collected the premiums, the policy itself makes clear that IRI is merely the agent of its diverse members, since it refers throughout to the "Companies" as the insurer and provides that notice of loss or of suit may be given to any one of the companies as well as to IRI.[9] The certificate of insurance naming plaintiff as loss payee states that it is issued *through* rather than *by* Factory Insurance Association, reinforcing the view that IRI functions basically as a conduit or agent for its various members. Thus, we do not think that plaintiff's amendment improperly seeks recovery from the defendants it names, and we shall permit it.

### D. *Relation Back*

Because plaintiff's amendment must be granted, as a final matter we must determine whether the amendment should be deemed to relate back to the date the lawsuit was originally filed. Fed.R.Civ.P. 15(c) provides in relevant part that:

> an amendment changing the party against whom a claim is asserted relates back if . . . the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

As we observed earlier, the provisions of the contract of insurance state that in a suit against the companies, service of process may be made on any one of them "and such service shall be deemed valid and binding service on all Companies." The contract further provides that "all notices or other communications required by this policy to be given to the Companies" may be given to their agent, IRI, "with the same force and effect as if given directly to the Companies." Thus, the service on IRI when the suit was originally filed was effectively service on the companies plaintiff seeks to name individually, and those companies cannot now complain of lack of notice or prejudice in maintaining their defense on the merits. Indeed, since defense counsel has stated that his firm will in all probability continue to represent the defense, since the case is in its early stages, and since the defenses to be raised will not vary among the individual companies, nor between them and IRI, we think the propriety of deeming the amendment to relate back is most clear.

We note finally that once plaintiff learned the identities of the individual member companies, it sought to amend its complaint to drop those who were not diverse. We therefore find that had plaintiff known that some IRI members were also Pennsylvania citizens at the outset, the complaint would not have named IRI as defendant and thus that the individual companies knew or should have known that, but for that mistake, the action would have been brought against them.

Defendant's motion to dismiss the complaint is granted without prejudice to the right of plaintiff to file an amended complaint naming as defendants individual diverse members of IRI, provided that the amended complaint is filed and served within ten days of the date of the accompanying Order.

---

**9.** Unfortunately, the policy provided us came into effect in August, 1977, upon expiration of the policy at issue here. Thus, we cannot compare the terms of the policy issued in 1974 through Factory Insurance Association with the renewal issued through IRI. Since defendant has not raised any objection to its use nor challenged plaintiff's characterization of it, we assume for purposes of these motions that any differences in terminology are immaterial.