**Vincent B. MURPHY, Jr., Plaintiff,**

**v.**

**John H. GUTFREUND, Richard J. Schmeelk, Gedale Horowitz, Richard G. Rosenthal, J. Ira Harris, Thomas W. Strauss and William J. Voute, Liquidators of Salomon Brothers Holding Company and Salomon Brothers, Defendants.**

**No. 82 Civ. 2394(MEL).**

United States District Court, S.D. New York.

Dec. 26, 1985.

Patterson, Belknap, Webb & Tyler, New York City, for plaintiff; Frederick T. Davis, Leslie C. Levin, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for defendants; Herbert M. Wachtell, Theodore N. Mirvis, of counsel.

LASKER, District Judge.

This is the most recent of several motions to dismiss in this case. Defendants now move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative the defendants move for summary judgment. The motion to dismiss under Rule 12(b)(1) is granted.

The facts giving rise to this action are set out in detail at 583 F.Supp. 957 (S.D.N.Y.1984). The suit arises out of the buyout of Salomon Brothers in 1981 by Phibro Corp. ("Phibro"). Vincent B. Murphy, until 1980 a Salomon Brothers general partner, alleges a breach by defendants of an annuity agreement under which Murphy was to receive $125,000 per year for ten years. Defendants have been sued in their capacity as "Liquidators of Salomon Brothers

Holding Company ("SBHC") and Salomon Brothers."

In an unpublished memorandum issued subsequent to the published opinion in this case, an earlier motion by defendants to dismiss for lack of subject matter jurisdiction was denied on the ground that diversity of citizenship between the parties existed. *Murphy v. Gutfreund*, No. 82–2394, slip op. (S.D.N.Y. Sept. 17, 1984). The premise of the finding was that defendants were being sued as trustees of a trust. "Since plaintiff entered into the disputed annuity agreement with the liquidating trust after the [Salomon Brothers and SBHC] partnerships ceased to exist, his suit is directed against a trust, albeit one created in order to liquidate partnerships." *Id.* at 1. Because he was suing a trust as opposed to a partnership, the plaintiff—a citizen of New Jersey—could maintain complete diversity between the parties by omitting as defendants those liquidators and former Salomon general partners who were also citizens of New Jersey, subject only to the requirements as to the joinder of indispensable parties given by Federal Rule of Civil Procedure 19(b). It was concluded that neither the one liquidator nor the ten former Salomon general partners who were citizens of New Jersey (as is the plaintiff) and who are not named as defendants were indispensable parties to this action. Consequently, subject matter jurisdiction was found to exist.

Subsequently, further discovery relating to jurisdiction was authorized. Defendants now renew their motion to dismiss for lack of subject matter jurisdiction on the ground that the additional facts discovered establish that the suit is one against a partnership, and not against a liquidating trust. Thus, defendants argue, the factual premise of the court's September 17 decision has been removed, and since there is not diversity of citizenship between the plaintiff and each of the Salomon partners, the action must be dismissed. In response, the plaintiff argues first, that the defendants are not in fact a partnership. Second, plaintiff contends that even if his suit is against a partnership, Federal Rule of Civil Procedure 19(b) allows him to drop those partners who are not indispensable parties and thus preserve diversity jurisdiction.

## I.

■ It is now apparent from the additional discovery taken in this case that no trust was in fact ever created by the Salomon partnerships and that the plaintiff has sued the partnerships. It is true that the First Restated Plan of Dissolution, Liquidation and Termination of Salomon Brothers and SBHC ("Restated Plan") specified that there would be established "a ten-year liquidating trust" with a $40 million fund for the purpose, *inter alia*, of making annuity payments to former partners such as plaintiff, Restated Plan at 7,[1] and provided that the SBHC executive committee, acting as "Liquidators," would become "trustees of the trust," Restated Plan at 12, 14.

On October 1, 1981, however, when the Phibro buyout took place and implementation of the Restated Plan began, no trust was created. (Nor has one been created since.) At that time, the operating assets of the Salomon partnerships were transferred to Phibro in exchange for cash and debentures which, along with some special investment assets that were retained by the Salomon partnerships, went to two partnerships apparently identical in all but name to Salomon Brothers and SBHC (as those partnerships were constituted on September 30, 1981). Affidavit of Donald M. Feuerstein ("Feuerstein Aff.") at 2; Deposition of Donald M. Feuerstein ("Feuerstein Dep.") at 53–54.

While the moderately voluminous affidavits and deposition excerpts submitted in support of the motion contain occasional qualifying language, as is not surprising, nevertheless, on the basis of the record as a whole, we find the facts to be as set forth

---

1. All documents cited in the text, including affidavits and deposition transcripts, are contained in whole or in excerpt form in the Appendix to Defendants' Memorandum of Law in Support of Dismissal of Amended Complaint For Lack of Subject Matter Jurisdiction.

below. On October 1, 1981, as described in the Restated Plan, Salomon Brothers and SBHC were dissolved, the names of the partnerships were changed to SBBD Liquidating Partnership and SBHC Liquidating Partnership respectively, and the members of the executive committee of the partnerships assumed the role of liquidators to wind up the affairs of the partnerships. Restated Plan at 1, 11–12; Feuerstein Dep. at 14, 75, 175.[2] What had been contemplated in the Restated Plan as a liquidating trust—out of which contingent obligations of the partnerships, including annuity payments such as that at issue here, were to be satisfied—was never created. Instead, up until October 1, 1982, such obligations were satisfied out of the assets held by the SBBD and SBHC Liquidating Partnerships. Feuerstein Dep. at 156–57, 159; Deposition of John H. Gutfreund at 119.

On October 1, 1982, two additional entities envisioned by the Restated Plan were created. What the Restated Plan had called the "Liquidating Trust" was incarnated as the SB Contingency Fund Partnership, essentially to serve the intended trust's purpose. What the Restated Plan had called the "Special Investment Partnership" was created as the SB Special Investments Holding Company to serve much of its original purpose of holding the special investment assets never transferred to Phibro. Restated Plan at 7–11; Memorandum to the Partners of SBBD and SBHC Liquidating Partnerships. Both new entities were partnerships with the same general partners as the two Liquidating Partnerships and were to be governed in the same manner. *See* Partnership Agreement of SB Contingency Fund Partnership at 1–3.[3]

Thus, in April of 1982—when the present action was initiated—and at the times of the salient events which form the subject matter of this dispute—*i.e.*, the August 1981 Salomon executive committee decision to include a non-competition condition in the annuity agreement, plaintiff's subsequent discussions with the executive committee and its decision as to the condition's applicability to him, the October 1981 execution by plaintiff of the annuity agreement, and the January 1982 demand for and denial of the first annuity payment—there simply was no trust and there accordingly were no trustees in existence. Indeed, even after October 1982 the only targets of a suit by plaintiff on his causes of action were the various Salomon partnerships.

In sum, the facts lead ineluctably to the conclusion that this action is a suit against a partnership.

## II.

The law which bears upon the present motion is actually much clearer than the occasionally ferocious arguments of the parties would suggest. For purposes of diversity, a partnership is a citizen of each jurisdiction of which a partner is a citizen. *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900); *Lewis v. Odell*, 503 F.2d 445, 446 (2d Cir.1974); *Cunard Line Limited v. Abney*, 540 F.Supp. 657, 660 (S.D.N.Y.1982) (collecting cases). Therefore, under the requirement of complete diversity, *Strawbridge v. Curtiss*, 7

---

**2.** Plaintiff stresses the fact that defendants have described Salomon Brothers and SBHC in various documents as having "terminated" on October 1, 1981. *See* Restated Plan at 1; Feuerstein Aff. at 1; Affidavit of John H. Gutfreund at 1. The word, "terminated," however, as used there, clearly referred to the event of dissolution and the commencement of winding up. New York partnership law specifically provides that "[o]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." N.Y.Partnership Law § 61 (McKinney 1948).

**3.** The partnership agreement of the SB Contingency Fund Partnership provided in Section 2(b) that the partners would be all of the individual general partners of the SBBD and SBHC Liquidating Partnerships and stated in Section 5(a) that the Executive Committee would have the same power with regard to the business of the new partnership as it had under the partnership agreement of the SBHC Liquidating Partnership.

U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), a court does not have diversity jurisdiction over a suit by a plaintiff against a partnership in which any partner's citizenship is identical to that of the plaintiff.

This rule would seem to require granting the motion to dismiss in this case, in which a number of Salomon partners are, like the plaintiff, citizens of New Jersey. However, plaintiff contends that even if his suit is nominally against a partnership, the courts have not strictly applied the rule that the citizenship of each partner must be taken into account in analyzing diversity, particularly where a partnership is in dissolution. Plaintiff argues that the standards of Federal Rule of Civil Procedure 19(b) should be applied to determine which partners may be dropped as defendants—*i.e.*, which partners are not indispensable parties—so that diversity jurisdiction may be preserved.

■ The short answer to plaintiff's argument is that Rule 19(b) is irrelevant in ascertaining the citizenship of a partnership for diversity purposes. The principal cases cited by plaintiff do not bear on the question of how to treat a partnership for diversity purposes. *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493 (2d Cir.1977), applied indispensable party analysis to a plaintiff's attempt to drop as defendants the administrator and two trustees of an express trust in order to preserve diversity. *Samaha v. Presbyterian Hospital*, 757 F.2d 529 (2d Cir.1985), applied the same analysis to a plaintiff's attempt to drop four individual defendants from a suit.[4]

■ But a suit against a partnership is not the same thing as a suit against a trustee or an individual partner. In the instant case plaintiff seeks the value of annuity payments he claims are owed to him, and the facts now of record leave no doubt that it is the partnership assets which would fund such an annuity. Under New York law, however, resort may be had against individual partners on a partnership obligation only if the partnership property is insufficient to pay the firm's debts. *Wisnouse v. Telsey*, 367 F.Supp. 855, 859 & n. 7 (S.D.N.Y.1973) (Weinfeld, J.). Unless the complaint alleges that the partnership is insolvent—which is not the case here because the partnership in liquidation is solvent, no action lies against the partners as individuals. *Helmsley v. Cohen*, 56 A.D.2d 519, 391 N.Y.S.2d 522 (1st Dept. 1977). Thus, in this case, Rule 19 analysis does not eliminate the necessity of determining the citizenship of the partnership (*i.e.*, of all its partners) as a prerequisite to deciding whether there is diversity between plaintiff and the defendant partnership.

■ The proposition advanced here by plaintiff has been the subject of a searching opinion by Judge Knapp in *Cunard Line Limited v. Abney*, 540 F.Supp. 657, 660–64 (S.D.N.Y.1982). Judge Knapp concluded that

[t]he citizenship of a *partnership* is that of *all* its partners, irrespective of whether any of them—as "non-indispensable" individual defendants—may be dropped to preserve jurisdiction in an action against the *individual* partners to enforce a joint partnership obligation,

*id.* at 661 (emphasis in original), and stated flatly that

[c]onsequently, the status of a partner under Rule 19 can have no bearing on the citizenship of the partnership of which he is a member,

*id.* at 661 n. 6. The instant case, of course, is an action against a partnership—not individual partners—since it is not disputed

---

4. Plaintiff refers to two other cases, both cited with approval in *Prescription Plan*, 552 F.2d at 497, as instances in which courts applied a Rule 19 analysis to determine diversity of citizenship involving a partnership. One of the cases, *Smith v. Mandel*, 66 F.R.D. 405 (D.S.C.1975), may be inapposite because the plaintiff in that case was able under South Carolina substantive law to proceed directly against one general partner in his individual capacity as personal guarantor of a loan. The other, *Isdaner v. Beyer*, 53 F.R.D. 4 (E.D.Pa.1971), does support plaintiff's theory. However, *Isdaner* contains no discussion of the governing rule for ascertaining the citizenship of a partnership. We decline to follow it.

that the partnership possesses assets more than sufficient to satisfy any potential judgment.

Nor is there merit to plaintiff's argument that courts distinguish among partnerships on the basis of their functional characteristics, treating "active" partnerships according to the governing partnership diversity rule and those in dissolution as mere groups of individuals. The Supreme Court in *Navarro Savings Assn. v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), rejected a functional approach to determining whether diversity of citizenship exists. There the Court refused to treat a business trust organized under Massachusetts law as an unincorporated association for diversity purposes, even though the Court recognized that the trust shared some of the attributes of an association. *Id.* at 458–66, 100 S.Ct. at 1780–84. As long as there was no sham or collusion, the Court found that it was the express, statutory form of the entity that should govern its treatment for diversity purposes. *Id.; see also Consumers Savings Bank v. Touche Ross & Co.,* 613 F.Supp. 249 (D.Mass.1985) (refusing to apply functional analysis so as to disregard partnership status of accounting firm for diversity purposes).[5]

The cases cited by plaintiff to support his theory that partnerships in dissolution are treated differently from active partnerships for diversity purposes are isolated instances in which courts have found that a partnership or an individual partner is not a real party in interest. They do not provide theoretical support for the proposition that the citizenship of a partnership in dissolution may be determined by considering the citizenship of less than all of the general partners. *See Wolff v. Wolff,* 768 F.2d 642 (5th Cir.1985) (partners in dissolved two-man partnership involved in dispute over division of assets; partnership itself held not party to action); *Mallin v. Schaper,* 185 F.2d 1 (7th Cir.1950) (in suit against dissolved two-man partnership, surviving partner is the necessary party, and his citizenship, if same as plaintiff's, will defeat diversity); *Dickson v. Tattnall County Hospital Authority,* 316 F.Supp. 531 (S.D.Ga.1970) (no collusion found where partner who had withdrawn from partnership assigned his interest in partnership claim, thus removing need to consider his citizenship in subsequent diversity suit on the claim).

Because the facts now of record establish that the suit is indeed against a partnership, and because a partnership is deemed to be a citizen of every state of which a general partner is a citizen, diversity of citizenship between the parties does not exist and the action must be dismissed for lack of subject matter jurisdiction. Accordingly, the defendants' motion to dismiss is granted.

It is so ordered.

---

5. In *Consumers,* as in the case at hand, the court was asked

(1) to disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy; (2) to engage in a functional analysis, focused on agreements between the general partners concerning management of the partnership's assets and control of litigation, to determine whether all general partners of Touche Ross or only those general partners on its Board of Directors are "real parties" to this case; and (3) to find that there is complete diversity between what it claims are the "real parties" to this controversy....

613 F.Supp. at 250. Judge Wolf held that under *Navarro* no "functional analysis is authorized to determine whether the citizenship of all or only some members of an unincorporated association should be considered in determining whether complete diversity exists" and that it was "neither necessary nor appropriate ... to engage in a functional analysis of the internal arrangements of the Touche Ross general partners or to decide the issues Touche Ross raises concerning the relative roles of its general partners and its Board of Directors." *Id.* at 251.